## KESLER *v.* DEPARTMENT OF PUBLIC SAFETY OF UTAH.

No. 14.   Argued October 10, 1961.—Decided March 26, 1962.

*E. J. Skeen* argued the cause for appellant.   With him on the briefs was *J. D. Skeen.*

*Gordon A. Madsen,* Assistant Attorney General of Utah, argued the cause for appellee.   With him on the brief was *Walter L. Budge,* Attorney General.

Mr. Justice Frankfurter delivered the opinion of the Court.

This case presents the rather rare claim of conflict between an otherwise valid exercise of a State's so-called police power and the overriding authority of the Bankruptcy Act.[1] The statute before us is Utah's Motor Vehicle Safety Responsibility Act[2]—a measure directed towards promoting safety in automobile traffic by administrative and compensatory remedies calculated to restrain careless driving. Its purpose is wholly unrelated to the purposes of the Bankruptcy Act.

In June 1957, a Utah court entered judgments in damages against appellant, based on his allegedly negli-

---

[1] This Court has a number of times considered alleged conflicts between the Bankruptcy Act and state insolvency laws, or other laws designed to affect the debtor-creditor relationship as such. *E. g., Pobreslo* v. *Joseph M. Boyd Co.,* 287 U. S. 518 (1933); *International Shoe Co.* v. *Pinkus,* 278 U. S. 261 (1929). See Williston, The Effect of a National Bankruptcy Law Upon State Laws, 22 Harv. L. Rev. 547 (1909). In addition, several courts have been confronted with possible conflicts between the Bankruptcy Act and other laws. *E. g., Spalding* v. *New York ex rel. Backus,* 4 How. 21 (1846) (contempt for defying injunction in aid of debt later discharged); *In re Hicks,* 133 F. 739 (N. D. N. Y. 1905) (fireman suspended for nonpayment of discharged debt); *Public Finance Corp.* v. *Londeree,* 200 Va. 607, 106 S. E. 2d 760 (1959) (financial statement from borrower to lender inadmissible in bankruptcy proceeding). But there are relatively few reported cases in this Court or any other in which such a conflict was asserted with state laws designed to protect health, safety, or the public peace, and all those found deal with automobile financial security laws. *Reitz* v. *Mealey,* 314 U. S. 33 (1941); *In re Locker,* 30 F. Supp. 642 (S. D. N. Y. 1939); *Munz* v. *Harnett,* 6 F. Supp. 158 (S. D. N. Y. 1933); *In re Perkins,* 3 F. Supp. 697 (N. D. N. Y. 1933); *Doyle* v. *Kahl,* 242 Iowa 153, 46 N. W. 2d 52 (1951); *Ellis* v. *Rudy,* 171 Md. 280, 189 A. 281 (1937); *DeVries* v. *Secretary of State,* 329 Mich. 68, 44 N. W. 2d 872 (1950); *Smith* v. *Hayes,* 133 N. E. 2d 443 (Ohio C. P. 1955).

[2] Utah Laws 1951, c. 71, as amended, Utah Code Ann., 1953, Tit. 41, c. 12.

gent operation of an automobile. On appeal to the State's Supreme Court the judgments were affirmed. After the judgments had remained unpaid for sixty days or more, the judgment creditors requested the court clerk to forward to the Department of Public Safety certified copies of the judgments, as provided by the Safety Responsibility Act. Thereupon the Department suspended appellant's automobile registration and his operator's license. On December 31, 1959, appellant was granted a voluntary discharge in bankruptcy, releasing him from the judgment debts. He then sought restoration of his license and registration. This was denied. The Safety Responsibility Act requires satisfaction of judgments due to auto accidents as a condition of reinstatement and specifically provides that a discharge in bankruptcy shall not relieve the judgment debtor from this requirement. Appellant initiated this ancillary bankruptcy proceeding, *Local Loan Co.* v. *Hunt*, 292 U. S. 234, 239, in the United States District Court for Utah, seeking an order requiring restoration of his privileges and a declaration that the Utah law was invalid insofar as it disrespected the discharge of the judgment debt by virtue of § 17 of the Bankruptcy Act, 11 U. S. C. § 35. A three-judge District Court, 28 U. S. C. § 2281, upheld the statute and denied relief, 187 F. Supp. 277 (1960). The case was brought here on direct appeal, 28 U. S. C. § 1253, and we noted probable jurisdiction, 364 U. S. 940.

A preliminary point of jurisdiction is noted though it was not adverted to either by the District Court or by the parties. Was this a proper case for convening a three-judge court, as it must have been to justify direct appeal to this Court? The present suit asks that state officials be "restrained and enjoined" from enforcing designated sections of the Utah Motor Vehicle Safety Responsibility Act because they "are unconstitutional and void," in that they are in conflict with § 17 of the

Bankruptcy Act and therefore necessarily violative of the Supremacy Clause of the Constitution of the United States, Art. VI. It would seem to be compellingly clear that this case falls within § 2281 of Title 28 of the United States Code, which bars a suit for an injunction "upon the ground of the unconstitutionality" of a state statute "unless the application therefor is heard and determined by a district court of three judges." This was so heard and appeal was properly brought directly here, unless invalidation of a state statute by virtue of the Supremacy Clause rests on a different constitutional basis than such invalidation because of conflict with any other clause of the Constitution, at least to the extent of reading such an implied exception into the procedure devised by § 2281. Neither the language of § 2281 nor the purpose which gave rise to it affords the remotest reason for carving out an unfrivolous claim of unconstitutionality because of the Supremacy Clause from the comprehensive language of § 2281.

Bearing in mind that the requirement for District Court litigation of three judges, of whom one must be a Justice of this Court or a circuit judge, involves a serious drain upon the federal judicial manpower, "particularly in regions where, despite modern facilities, distance still plays an important part in the effective administration of justice . . . ," this Court has been led by a long series of decisions, in a variety of situations, to generalize that this procedural device was not to be viewed "as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such." *Phillips* v. *United States,* 312 U. S. 246, 250–251. The Court had already held that the three-judge requirement is not to be invoked on a contingent constitutional question. *International Ladies' Garment Workers* v. *Donnelly Co.,* 304 U. S. 243, 251. The Court has been consistent in this view in deal-

ing with claims of conflict between a state statute and a federal statute which has the constitutional right of way.

Bearing in mind that due regard for the healthy working of the federal judicial system demands that the three-judge court requirement be treated as "an enactment technical in the strict sense of the term," we must examine the basis of the plaintiff's claim to determine whether it must come before a single judge or three judges. If in immediate controversy is not the unconstitutionality of a state law but merely the construction of a state law or the federal law, the three-judge requirement does not become operative. Such was the ruling in *Ex parte Buder,* 271 U. S. 461, where the Supremacy Clause was not invoked and therefore the three-judge court was not required. In *Ex parte Bransford,* 310 U. S. 354, *Buder* was followed. A three-judge court was not required because the issue was "merely the construction of an act of Congress, not the constitutionality of the state enactment." 310 U. S., at 359. Contrariwise, in *Query* v. *United States,* 316 U. S. 486, the complainant sought to restrain the state officers from enforcing a state statute on the score of unconstitutionality of its threatened application. 316 U. S., at 489. Accordingly, the requirement of a three-judge court applied. *Query* v. *United States* and *Ex parte Bransford* were clearly differentiated from one another in *Case* v. *Bowles,* 327 U. S. 92, where, as in *Bransford,* "the complaint did not challenge the constitutionality of the state statute but alleged merely that its enforcement would violate the Emergency Price Control Act. Consequently a three-judge court is not required." 327 U. S., at 97.

Here, no question of statutory construction, either of a state or a federal enactment, is in controversy. We are confronted at once with the constitutional question whether the discharge in bankruptcy of a debt ousts the police power of a State from a relevant safety measure,

the indirect and episodic consequence of which may have some bearing on a discharged debt but which in no wise resuscitates it as an obligation. The general principle elucidated by Mr. Justice Cardozo in differentiating between different stages of adjudication at which issues are reached, *Gully* v. *First National Bank*, 299 U. S. 109, 117–118, serves to guide disposition of this case as it differently did *Phillips* v. *United States, supra*. This case presents a sole, immediate constitutional question, differing from *Buder, Bransford,* and *Case,* which presented issues of statutory construction even though perhaps eventually leading to a constitutional question.

The problem of highway safety has concerned legislatures since the early years of the century. Utah, like other States, has responded to this problem by requiring the registration [3] and inspection [4] of vehicles and prescribing certain necessary equipment; [5] by requiring examination and licensing of operators and excluding unqualified persons from driving; [6] by providing comprehensive regulations of speed and other traffic conditions; [7] and by authorizing extraterritorial service of process on nonresident motorists involved in accidents within the State.[8] And, like every other State, Utah has responded by enacting a financial-responsibility law.

Financial-responsibility laws are intended to discourage careless driving or to mitigate its consequences by requiring as a condition of licensing or registration the satisfaction of outstanding accident judgments, the posting of security to cover possible liability for a past accident, or the filing of an insurance policy or other proof of ability

---

[3] Utah Code Ann., 1953, Tit. 41, c. 1, Art. 3.

[4] *Id.,* 41–6–158.

[5] *Id.,* Tit. 41, c. 6, Art. 16.

[6] *Id.,* Tit. 41, c. 2.

[7] *Id.,* Tit. 41, c. 6, Arts. 1–15.

[8] *Id.,* 41–12–8.

to respond in damages in the future. By 1915 a San Francisco ordinance required a bond or liability insurance for all buses;[9] a number of other cities and States early enacted similar provisions.[10] In 1925 Massachusetts forbade the registration of any motor vehicle without proof of adequate liability insurance or other evidence of ability to satisfy a judgment. Mass. Laws 1925, c. 346. That same year the Commissioners on Uniform Laws appointed a committee to consider a uniform compulsory insurance law. Handbook of the National Conference on Uniform State Laws (1932), p. 261.

Unwilling to require insurance or its equivalent from all highway users, six other States—five of them in New England—adopted within the next two years laws with the same design but limited to careless drivers. The first of these, Connecticut Acts 1925, c. 183, provided for suspension of the registration of those convicted of certain infractions relating to motor vehicles and of those causing accidents of specified gravity, requiring proof of financial responsibility as a condition to restoration. Vermont enacted a similar provision, Acts 1927, No. 81. Maine's law, Laws 1927, c. 210, and Minnesota's, Laws 1927, c. 412, § 61 (b), applied only to violations.[11] Rhode Island, Acts 1927, c. 1040, originally required proof only after accidents resulting from violations; Acts 1929, c. 1429, required proof in addition not only of persons violating certain laws but of all minors as well. In New Hampshire, Laws 1927, c. 54, security to cover a potential judgment was required on request of the plaintiff

---

[9] Sustained in *In re Cardinal*, 170 Cal. 519, 150 P. 348 (1915).

[10] *E. g.*, N. J. Laws 1916, c. 136; N. Y. Laws 1922, c. 612. See *Packard* v. *Banton*, 264 U. S. 140 (1924); *Willis* v. *City of Fort Smith*, 121 Ark. 606, 611, 182 S. W. 275 (1916); *Opinion of the Justices*, 81 N. H. 566, 568, 129 A. 117, 118–119 (1925), and cases cited; Annot., 22 A. L. R. 230 (1923).

[11] North Dakota (Laws 1929, c. 163) adopted a similar law.

in an accident case, if fault appeared after preliminary inquiry.

In 1929 seven States enacted laws providing for the first time that driving privileges be suspended following an adverse judgment in damages. Vermont added to her earlier statute a provision suspending privileges of anyone against whom there was an outstanding judgment based on a traffic violation until proof was made of financial responsibility. Vt. Acts 1929, No. 76. Connecticut, Maine, and Wisconsin suspended the privileges of the judgment debtor until the judgment was satisfied. Conn. Acts 1929, c. 297, § 25;[12] Me. Laws 1929, c. 209; Wis. Laws 1929, c. 76. In Connecticut, however, suspension was only to occur if the judgment remained unpaid for sixty days, and then only "[u]pon complaint . . . by any prevailing party" in the lawsuit. Iowa's law was substantially similar, giving the creditor control by providing that "a transcript of such judgment . . . may be filed" to initiate suspension. Iowa Laws 1929, c. 118.[13] California required court clerks to transmit to the vehicle administrator notice of judgments unpaid for fifteen days; the debtor's license and registration were thereupon to be suspended until both the debt was discharged and proof of financial responsibility was given. Cal. Stat. 1929, c. 258, § 4. New York adopted a law materially the same as California's, providing in addition that a discharge in bankruptcy should not relieve the judgment debtor of these requirements and also suspending privileges pending proof after conviction for certain violations. N. Y. Laws 1929, c. 695.

[12] This Act was repealed by Conn. Acts 1931, c. 82, § 294a, and the 1925 provision for proof following certain accidents was not re-enacted. *Id.*, § 295a.

[13] South Dakota (Laws 1933, c. 144) adopted a similar law.

Abandoning the drive for a uniform compulsory-insurance law as not then feasible, the Commissioners on Uniform Laws in 1929 began work on a more limited financial-responsibility act.  As finally approved by the Conference in 1932, the Uniform Automobile Liability Security Act combined features from several of the statutes already in force.  Proof of financial responsibility was required to be maintained for a minimum of three years by four classes of persons: (1) those convicted of certain violations; (2) those wishing to obtain or renew driving privileges, and who had been at fault in two accidents of specified gravity during the preceding year; (3) minors; (4) those against whom a judgment of a certain magnitude had remained unsatisfied for fifteen days.  The provisions regarding judgments followed those of California and New York: the court or clerk was to forward notice of all unsatisfied judgments, and the debtor's privileges were to be suspended until both satisfaction of the obligation, to the extent of the minimum required insurance amount, and proof of future responsibility.  11 U. L. A. 125 (1938).

The Uniform Act as such was adopted only in Hawaii, Pennsylvania, and Washington; [14] its provisions regarding accidents and minors found little favor.  Yet during the two decades following 1929 a large majority of States enacted one or another form of financial-responsibility law.  Utah's first such statute, enacted in 1943, was typical of the most common enactment.  Twelve other States and the District of Columbia adopted this same basic law; [15] and, with relatively minor modifications, it was

[14] Hawaii Laws 1933, c. 166; Pa. Laws 1933, No. 110; Wash. Laws 1939, c. 158.

[15] Alabama (Laws 1947, No. 276); District of Columbia (49 Stat. 167 (1935)); Idaho (Laws 1939, c. 117); Illinois (Laws 1938 (1st sp. sess.), p. 51); Indiana (Acts 1935, c. 113); Kentucky (Acts

paralleled by five more [16] in addition to the earlier California and New York laws. This law provided for suspension of privileges following certain convictions and after a judgment remained unpaid a specified time. Restoration in either case was conditioned on proof of future responsibility; in the case of a judgment, the debt must be discharged as well. The unpaid judgment was required to be forwarded on the initiative of the court or clerk. Six States adopted laws differing from Utah's principally in that proof of future responsibility, without satisfaction of the debt, was sufficient to terminate suspension.[17] In addition, most of these statutes provided

1936, c. 70); Michigan (Acts 1933, No. 203); Missouri (Laws 1945, p. 1207); Montana (Laws 1937, c. 129); Nebraska (Laws 1931, c. 108); North Dakota (Laws 1939, c. 167); Oregon (Laws 1935, c. 434); Utah (Laws 1943, c. 68); West Virginia (Acts 1935, c. 61). The ultimate source of these laws seems to have been a bill sponsored by the American Automobile Association as early as 1928. See Association of Casualty & Surety Executives, Comments on "Report by the Committee to Study Compensation for Automobile Accidents to the Columbia University Council for Research in the Social Sciences" (1932), pp. 14–15.

[16] Arizona (Laws 1935, c. 45) limited suspension to a maximum of five years, and Kansas (Laws 1939, c. 86) to three. Virginia (Acts 1932, c. 272) required satisfaction of the debt before reinstatement, but after one year proof alone was sufficient. Virginia did not provide for suspension and proof following violations. New Jersey (Laws 1929, c. 116, as amended, Laws 1931, c. 169) and New Mexico (Laws 1947, c. 201) required proof after certain accidents as well. Arizona did not require the clerk to give notice of unpaid judgments; suspension was ordained "on report" of failure to pay.

[17] Georgia (Laws 1945, No. 332), North Carolina (Laws 1931, c. 116), and apparently Colorado (Laws 1935, c. 163. The section title reads "and," but the text "or"), restored privileges on either proof or satisfaction rather than both; Minnesota (Laws 1933, c. 351), Ohio (Laws 1935, p. 218), and Wisconsin (Laws 1941, c. 206) on proof without more. In Ohio and Wisconsin, suspension terminated automatically after one year. Ohio after 1943 (p. 658) required satisfaction but not proof and extended suspension to five years. Georgia and North Carolina did not require proof after violations.

that a discharge in bankruptcy should not relieve the judgment debtor from suspension.[18]

Indiana and Maryland in 1931, like Connecticut and Iowa before, placed control of suspension for unpaid judgments in the hands of the creditor by requiring that notice be forwarded to the administrator only on the creditor's request. Ind. Acts 1931, c. 179, § 2; Md. Laws 1931, c. 498. Neither specified the effect of a discharge. Maryland's law was in other respects like that of Utah; Indiana's, which required only proof of future responsibility and not discharge for reinstatement, was replaced in 1935 by a statute on the Utah model. In Massachusetts suspension followed when the registrar was "satisfied by such evidence as he may require" that the judgment was sixty days unpaid. Mass. Acts 1932, c. 304.[19] Delaware's law was similar in this respect. Del. Laws 1931, c. 14. New Hampshire's 1937 law required proof of future responsibility following certain convictions and certain accidents but not after unpaid judgments; it required those involved in accidents not only to provide proof for the future but to deposit security to cover the past accident as well. N. H. Laws 1937, c. 161.[20] Provisions requiring security after accidents, but without the need of proof for the future, were adopted by a number of other States in the next few years.[21]

---

[18] Alabama, Arizona, California (Stat. 1937, c. 840), Colorado, District of Columbia, Idaho, Illinois, Indiana, Kansas, Kentucky, Michigan, Missouri, Montana, New Jersey (Laws 1941, c. 296), New Mexico, New York, Oregon, Utah, and West Virginia.

[19] This law extended only to property judgments, and only satisfaction of the debt, not proof of future ability to respond, was required.

[20] Maine (Laws 1941, c. 255), Michigan (Acts 1943, No. 248), and New York (Laws 1941, c. 872), enacted comparable accident provisions. Maine at the same time repealed its requirements pertaining to unpaid judgments.

[21] Colorado (Laws 1947, c. 124); Florida (Laws 1947, c. 23626); Illinois (Laws 1945, p. 1078); Indiana (Acts 1943, c. 175); Mary-

New York's law, one source of most of this early legislation, underwent a gradual evolution after its enactment. In 1936 the legislature provided that if proof of future responsibility was given the maximum period of suspension should be three years.[22] The same year the statute was further amended to add a novel provision. If the judgment creditor consented, and if proof of future responsibility was given, a defaulting judgment debtor might continue to enjoy driving privileges for six months, and thereafter so long as consent was not withdrawn.[23] In 1937 it was made clear the requirement of judgment payment did not apply to insured owners or drivers.[24] In 1939 report of the unpaid judgment was made dependent upon request by the creditor.[25] Finally, in 1941, New York adopted the New Hampshire requirement of proof and security for damages arising out of certain accidents.[26] The 1941 law also provided, as a number of States had done before,[27] for payment in installments, with suspension upon default of payments.

It was against this background that the Uniform Act of 1932 was withdrawn for further study in light of the States' extensive experience. Handbook of the National Conference of Commissioners on Uniform State Laws (1943), p. 69. The result of this study was an entirely revised model act, indorsed by the National Con-

---

land (Laws 1945, c. 456); Minnesota (Laws 1945, c. 285); Nevada (Laws 1949, c. 127); Tennessee (Acts 1949, c. 75); Wisconsin (Laws 1945, c. 375).

[22] N. Y. Laws 1936, c. 293.

[23] N. Y. Laws 1936, c. 448.

[24] N. Y. Laws 1937, c. 463.

[25] N. Y. Laws 1939, c. 618.

[26] N. Y. Laws 1941, c. 872.

[27] Arizona, California (Stat. 1935, c. 591; see id., p. 159), Colorado, District of Columbia, Idaho, Illinois, Indiana (1935), Kansas, Kentucky, Maryland, Michigan, Montana, Nebraska, New Jersey, North Dakota (1939), Ohio, Oregon, and West Virginia.

ference, which now appears as Chapter 7 of the Uniform Vehicle Code of 1956.[28]

The new Uniform Code reflects most of the changes wrought in New York's law from 1929 to 1941. It requires persons involved in certain accidents to deposit security to cover the past if they were not insured. It requires proof of future responsibility from those convicted of certain violations and from those owing judgments unsatisfied after thirty days. In addition, unless insured, the judgment debtor must satisfy the obligation, to the extent of the minimum amounts of financial responsibility required, before his privileges are restored. Installment payments, until default, are allowed. Bankruptcy is no release; unpaid judgments are to be reported only on request by the judgment creditor; with the creditor's consent the debtor may be permitted to drive for six months, if he shows financial responsibility, and longer until consent is revoked.

The material provisions of the new Uniform Code with respect to financial responsibility are currently in effect in twenty-one States, including Utah, and in the District of Columbia.[29] Fifteen other States have enacted

---

[28] National Committee on Uniform Traffic Laws and Ordinances, Uniform Vehicle Code (1956), §§ 7–101 to 7–505; see Handbook of the National Conference of Commissioners on Uniform Laws (1946), p. 131.

[29] Alabama (Laws 1951, No. 704, as amended, Ala. Code, 1940, as recompiled 1958, Tit. 36, §§ 74 (42)–74 (83). The 1959 amendment (Laws, No. 72) limited suspension to a maximum of three years); Arkansas (Acts 1953, No. 347, Ark. Stat., 1947 (1957 replacement), Tit. 75, c. 14); District of Columbia (68 Stat. 120 (1954), as amended 72 Stat. 957 (1958), D. C. Code, 1961, Tit. 40, c. 4); Florida (Laws 1957, c. 57–147, Fla. Stat., 1959, c. 324. No specific provision is made regarding bankruptcy); Georgia (Laws 1956, No. 362, Ga. Code Ann., 1958, c. 92A–6. Georgia requires only payment and not proof for restoration after judgment and requires no proof to reinstate with creditor consent. There is no provision regard-

statutes substantially similar except that unpaid judg-
ments are reported by the court or clerk without request
by the creditor.[30]   Nine more retain statutes differing
from the last foregoing principally in the absence of pro-

ing bankruptcy.  From 1951 (Laws, No. 386) to 1956, Georgia's finan-
cial-responsibility provision required security after accidents and proof
after certain violations.) ;  Hawaii (Laws 1949, c. 393, Hawaii Rev.
Laws, 1955, c. 160, part III) ;  Kansas (Laws 1957, c. 68, Kan. Gen.
Stat., 1949 (Supp. 1959), c. 8, Art. 7) ;  Louisiana (Acts 1952, No. 52,
La. Rev. Stat., 1950 (1960. Pocket Part), Tit. 32, c. 5) ;  Maryland
(Laws 1931, c. 498, as amended, Md. Ann. Code, 1957, Art. 66½,
§§ 116–149.  No provision is made for creditor consent to restoration
before payment.) ;  Mississippi (Laws 1952, c. 359, Miss. Code Ann.,
1942, as recompiled 1956, Tit. 30, §§ 8285–01 to 8285–41) ;
Montana (Laws 1951, c. 204, Mont. Rev. Code, 1947 (1954 replace-
ment), Tit. 53, c. 4) ;  Nevada (Laws 1957, c. 384, Nev. Rev.
Stat., 1957, c. 485) ;  New Mexico (Laws 1955, c. 182, N. M.
Stat., 1953 (1960 replacement), Tit. 64, Art. 24) ;  North Caro-
lina (Laws 1953, c. 1300, N. C. Gen. Stat., 1959 Supp., c. 20,
Art. 9A.  From Laws 1947, c. 1006, to 1953, North Carolina's law
was substantially the same as now except that report of unpaid judg-
ments was mandatory, and that proof rather than security was
required in accident cases, but only as to unlicensed operators.) ;
Ohio (Laws 1951, p. 563, as amended, Page's Ohio Rev. Code Ann.,
1954 and 1961 Supp., c. 4509) ;  Oklahoma (Laws 1949, p. 347, Okla.
Stat., 1951, Tit. 47, c. 14) ;  Oregon (Laws 1955, c. 429, as amended,
Ore. Rev. Stat., 1953 (1961 replacement part), c. 486.  Proof as well
as security is required after accident; the maximum suspension is
five years.) ;  Rhode Island (Laws 1952, c. 3002, R. I. Gen. Laws,
1956, Tit. 31, c. 32) ;  South Dakota (Laws 1957, c. 212, S. D. Code,
1939 (Supp. 1960), c. 44.03A.  In 1953, c. 251, South Dakota had
suspended licenses on notice from the creditor until the judgment
was paid, or the creditor's consent was given.) ;  Texas (Laws 1951,
c. 498, Vernon's Tex. Civ. Stat. Ann., 1960, Art. 6701h.) ;  Utah
(Laws 1951, c. 71, as amended, Utah Code Ann., 1953, 41–12–1 to
41–12–41.  Utah has only recently provided for proof after con-
victions, Laws 1961, c. 95.) ;  West Virginia (Acts 1951, c. 130, W. Va.
Code Ann., 1955, c. 17D).

[30] Alaska (Laws 1959, c. 163, Alaska Comp. Laws Ann., 1949 (Supp.
1959), Tit. 50, c. 8.  Both a deposit and future proof are required

visions for restoration of privileges without payment on the consent of the creditor; these are in substance the same as the common statute earlier in force in Utah, except that security is usually required in the event of accident.[31] Vermont's statute, requiring only proof and

in some accident cases.); Arizona (Laws 1951, c. 122, Ariz. Rev. Stat. Ann., 1956, Tit. 28, c. 7); Delaware (Laws 1951, c. 359, Del. Code Ann., 1953, Tit. 21, c. 29); Idaho (Laws 1947, c. 256, Idaho Code, 1947 (1957 replacement), Tit. 49, c. 15); Iowa (Laws 1947, c. 172, Iowa Code, 1958, c. 321A); Kentucky (Acts 1946, c. 118, Ky. Rev. Stat., 1960, c. 187); Minnesota (Laws 1945, c. 285, as amended, Minn. Stat., 1953, c. 170); Missouri (Laws 1953, p. 569, Vernon's Ann. Mo. Stat., 1952 (Supp. 1960), c. 303); Nebraska (Laws 1949, c. 178, Neb. Rev. Stat., 1943 (1960 reissue), c. 60, Art. 5); North Dakota (Laws 1947, c. 256, as amended, N. D. Century Code, 1960, c. 39–16); Pennsylvania (Laws 1945, No. 433, superseded by Laws 1959, No. 32, Art. XIV, Purdon's Pa. Stat. Ann., 1960, Tit. 75, c. 1, Art. XIV); South Carolina (Acts 1952, No. 723, S. C. Code, 1952 (Supp. 1960), Tit. 46, c. 3.1); Virginia (Acts 1944, c. 384, in addition required both proof and security after accidents, and proof after suspensions authorized "on any reasonable ground" and after release from institutions for insanity, drug addiction, etc. These provisions were dropped before the revision of 1958, c. 541, now Va. Code, 1950 (1958 replacement), Tit. 46.1, c. 6); Wisconsin (Laws 1957, c. 260, p. 302, Wis. Stat. Ann., 1958, c. 344); Wyoming (Laws 1947, c. 160, as amended, Wyo. Stat., 1957, Tit. 31, c. 6).

[31] California (Cal. Vehicle Code, 1960, Div. 7. No proof is required after convictions.); Colorado (Colo. Rev. Stat., 1953, c. 13, Art. 7); Connecticut (Acts 1951, No. 179, as amended, Conn. Gen. Stat., 1958, Tit. 14, c. 246, part VI. Privileges are suspended on entry of any judgment, until satisfied; after violations, until proof of future responsibility; and after accidents, unless security is deposited. There is no provision for notification by court or by creditor.); Illinois (Smith-Hurd's Ill. Ann. Stat., 1958, c. 95–½, c. 7); Indiana (Burns' Ind. Ann. Stat., 1952, Tit. 47, c. 10. Proof may be required after accidents in addition to security.); Michigan (Mich. Stat. Ann., 1960, §§ 9.2201 to 9.2232. Both deposit and proof are required after suspension for accidents.); New Jersey (N. J. Stat. Ann., 1961, Tit. 39, c. 6); Tennessee (Acts 1959, c. 277, Tenn. Code Ann., 1955 (Supp. 1961), Tit. 59, c. 12. No provision is made for report of judgments

not payment to reinstate privileges after judgment, differs in other particulars as well.[32]  Maine and New Hampshire make no provisions for judgments, suspending only after accidents and violations.[33]  In Massachusetts and New York insurance or its equivalent is compulsory.[34]

Twenty years ago, the Court had before it the New York variant of this legislation.  This provided for suspension of license and registration whenever a judgment remained unpaid for fifteen days, as certified by the county clerk on his initiative.  Proof of future responsibility was required for reinstatement; unless three years had elapsed, so was satisfaction of the judgment other than by discharge in bankruptcy.  In 1936 the statute was amended to terminate the suspension with creditor consent on proof of responsibility, and in

---

by either court or creditor.  Tennessee's first responsibility law, Acts 1949, c. 75, required security after accidents; Acts 1951, c. 206, added suspension until overdue judgments were discharged other than in bankruptcy.) ; Washington (Wash. Rev. Code, 1951 & 1959 Supp., c. 46.24).

[32] Vt. Stat. Ann., 1959, Tit. 23, §§ 801–809.  Proof is required after certain violations or unsatisfied judgments based on violations, and after certain accidents.  When an accident is caused by a violation, a deposit is also required.  No provision is made for reporting judgments.

[33] Maine (Me. Rev. Stat., 1954 and Supp. 1959, c. 22, §§ 75–82. Suspension is authorized after violations and accidents, or on "any reasonable ground"; proof is required in all such cases, and security also in accidents.) ; New Hampshire (N. H. Rev. Stat. Ann., 1955, c. 268.  Proof is required after violations, proof and security after accidents.).

[34] Massachusetts (Mass. Gen. Laws Ann., 1958, c. 90, §§ 34A–34J. Suspension is also ordained when the registrar is "satisfied by such evidence as he may require" that a property judgment is unpaid.  *Id.,* § 22A.) ; New York (N. Y. Vehicle & Traffic Law, 1960, Art. 6, §§ 310–321.  New York's earlier law, similar to the 1956 Uniform Code, is still in the books, *id.,* §§ 330–368, although no one has been required to maintain proof under its provisions since 1957, *id.,* § 346.).

1939 to require certification of the judgment only on request by the creditor or his attorney. The Court held that this statute, as it stood before 1936, was an appropriate measure to promote highway safety and did not violate the Due Process Clause of the Fourteenth Amendment. Because the statute was not designed to aid collection of debts but to enforce a policy against irresponsible driving, and because this policy would be frustrated if negligent drivers could avoid the statute by "the simple expedient of voluntary bankruptcy," no conflict with the Bankruptcy Act was found. The Court expressly left unanswered the claim that the amendments giving the creditor control over initiation and duration of the suspension were contrary to the Bankruptcy Act. *Reitz* v. *Mealey,* 314 U. S. 33 (1941).

The Utah law here challenged is in substance that which the Court did not have to pass on in *Reitz* v. *Mealey,* with two exceptions. Not only is the creditor permitted to initiate, lift, and restore suspension as under the New York amendments; he is also given power to restore suspension for default on payment of installments, and, if the judgment is not satisfied, the suspension is permanent rather than limited to three years. Appellant urges that the Utah creditor's added control over the license and registration procedures demonstrates that the State is acting as a collecting agent for the creditor rather than furthering an interest in highway safety, and that to make suspension perpetual rather than for three years only renders the collection pressure more effective. Do these differences make a constitutional difference, in light of the considerations that underlay the decision in the *Reitz* case?

Section 17 of the Bankruptcy Act, 11 U. S. C. § 35, provides that "A discharge in bankruptcy shall release a bankrupt from all of his provable debts," with exceptions not here material. See also 11 U. S. C. § 1 (15). A

discharge relieves the bankrupt "from legal liability to pay a debt that was provable," *Zavelo v. Reeves,* 227 U. S. 625, 629 (1913); it is a valid defense in an action brought in a state court to recover the debt. A State cannot deal with the debtor-creditor relationship as such and circumvent the aim of the Bankruptcy Act in lifting the burden of debt from a worthy debtor and affording him a new start. The limitations imposed upon the States by the Act raise constitutional questions under the Supremacy Clause, Art. VI. Thus, a discharge does not free the bankrupt from all traces of the debt, as though it had never been incurred. This Court has held that a moral obligation to pay the debt survives discharge and is sufficient to permit a State to grant recovery to the creditor on the basis of a promise subsequent to discharge, even though the promise is not supported by new consideration. *Zavelo v. Reeves, supra.* The theory, the Court declared, is that "the discharge destroys the remedy but not the indebtedness," 227 U. S., at 629.[35] And in *Spalding v. New York ex rel. Backus,* 4 How. 21 (1846), under an earlier bankruptcy law,[36] the Court held that a discharge did not prevent the State from collecting a fine for contempt in violation of an injunction issued to aid in the execution of a judgment debt, although the fine was turned over to the creditor. States are not free to impose whatever sanctions they wish, other than an action of debt or assumpsit, to enforce collection of a discharged debt. But the lesson *Zavelo* and *Spalding* teach

---

[35] See 1 Collier, Bankruptcy (14th ed. 1956), ¶ 17.27; 8 Remington, Bankruptcy (6th ed. 1955), § 3225; and cases cited.

[36] Act of Aug. 19, 1841, c. 9, § 4, 5 Stat. 440, 444: a discharge and its certificate "shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt, which are proveable under this act, and shall be and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever . . . ."

is that the Bankruptcy Act does not forbid a State to attach any consequence whatsoever to a debt which has been discharged.[37]

The Utah Safety Responsibility Act leaves the bankrupt to some extent burdened by the discharged debt. Certainly some inroad is made on the consequences of bankruptcy if the creditor can exert pressure to recoup a discharged debt, or part of it, through the leverage of the State's licensing and registration power. But the exercise of this power is deemed vital to the State's well-being, and, from the point of view of its interests, is wholly unrelated to the considerations which propelled Congress to enact a national bankruptcy law. There are here overlapping interests which cannot be uncritically resolved by exclusive regard to the money consequences of enforcing a widely adopted measure for safeguarding life and safety.

When *Reitz* v. *Mealey* was in the District Court, 34 F. Supp. 532 (N. D. N. Y. 1940), Judge Learned Hand upheld the statute, as did this Court, without deciding the validity of the creditor-control amendments; but in passing he dealt with the realities of the situation and demonstrated the thin difference they made. As for the 1936 amendment, "The original statute in fact gave the creditor power at any time to restore the license by a complete satisfaction of the judgment; and the amend-

---

[37] A Georgia court held that a discharge does not destroy a landlord's right to evict for non-payment of rent, *Carter* v. *Sutton,* 147 Ga. 496, 94 S. E. 760 (1917). In Minnesota it was held that land equitably charged with the payment of a judgment debt was not released by the debt's discharge in bankruptcy, *Evans* v. *Staalle,* 88 Minn. 253, 92 N. W. 951 (1903). In Missouri a discharged debt was held chargeable to diminish an heir's share in the equitable accounting of an estate, *Leach* v. *Armstrong,* 236 Mo. App. 382, 156 S. W. 2d 959 (1941). We intimate no opinion on the correctness of these decisions.

ment merely added to this by enabling him to withdraw his consent, once given, after six months." The 1939 amendment

> "merely relieved the clerk of an irksome duty. He had been obliged to find out whenever a judgment had remained unpaid for fifteen days, whether it was for damages due to negligent driving. Instead of this the amendment set up an automatic system depending upon the creditor's interest in starting the clerk into action. This distinction is, however, more apparent than real because under the section as it stood before 1939, the creditor had the same incentive and he was as likely as thereafter to advise the clerk of the judgment . . . . [T]he chance that the clerk would have acted without being prodded by the creditor must have been very remote." 34 F. Supp., at 535.

This Court was of course aware of the practical pressures of the New York statute as a device to collect debts discharged in bankruptcy; the argument was pressed upon it in the dissent. Yet the statute was upheld. Why? Because the "police power" of a State, especially when exerted for the protection of life and limb, is as pervasive as any of the reserved powers of the States and should be respected unless there is a clear collision with a national law which has the right of way under the Supremacy Clause of Article VI. The fact that the consequences of the New York Safety Act may in fact have subjected a debtor to the payment of money of which as an obligation in the creditor-debtor relation he was quit did not lead this Court to hold that the State had intruded into the bankruptcy domain or subverted the purpose of the bankruptcy law. Why? At the heart of the matter are the complicated demands of our federalism.

Are the differences between the Utah statute and that of New York so significant as to make a constitutionally decisive difference? A State may properly decide, as forty-five have done, that the prospect of a judgment that must be paid in order to regain driving privileges serves as a substantial deterrent to unsafe driving. We held in *Reitz* that it might impose this requirement despite a discharge, in order not to exempt some drivers from appropriate protection of public safety by easy refuge in bankruptcy.[38] To make suspension of privileges dependent upon the creditor's request, as twenty-one have done, and as Congress has done for the District of Columbia, is nothing more than to make explicit what happens in the real world regardless of the statutory language. Even if the creditor-request provision makes suspension more likely, we see no reason why a State may not so provide in order that the deterrent be made more effective by authorizing the party most likely to be interested in the enforcement of the sanction to set it in motion. Nor do we think in excess of their power the action of thirty-five States that have attempted, as Congress has done, to authorize the creditor to lift and restore the suspension, or the forty-three that, again as Congress, have provided that in the absence of creditor consent the suspension shall last forever unless the judgment is extinguished. To whatever extent these provisions make it more probable that the debt will be paid despite the discharge, each no less reflects the State's important deterrent interest. Congress had no thought of amending the

---

[38] There has been an enormous increase in nonbusiness bankruptcy cases in recent years. In 1946, 8,566 such petitions were filed; in 1960, 97,750. Nonbusiness petitions were 74.7% of the total in 1940 and 88.8% in 1960. Hearings before Subcommittee of House Committee on Appropriations, on the Judiciary, 87th Cong., 1st Sess. 204. The tendency thus reflected has not slackened with time.

Bankruptcy Act when it adopted this law for the District of Columbia; we do not believe Utah's identical statute conflicts with it either.

Utah is not using its police power as a devious collecting agency under the pressure of organized creditors. Victims of careless car drivers are a wholly diffused group of shifting and uncertain composition, not even remotely united by a common financial interest. The Safety Responsibility Act is not an Act for the Relief of Mulcted Creditors. It is not directed to bankrupts as such. Though in a particular case a discharged bankrupt who wants to have his rightfully suspended license and registration restored may have to pay the amount of a discharged debt, or part of it, the bearing of the statute on the purposes served by bankruptcy legislation is essentially tangential.

There are no apothecary's scales by which the differences between the Utah and New York statutes can be constitutionally weighed. The matter rests in judgment. That organon of adjudication leads us to conclude that the differences are too insubstantial, too tenuous as a matter of practical reality, to reach constitutional solidity.

*Affirmed.*

Mr. Justice Whittaker took no part in the decision of this case.

Mr. Justice Stewart, concurring in part.

For the reasons convincingly set forth in the dissenting opinion of The Chief Justice, I agree with him that a three-judge court should not have been convened in this case, and that consequently this appeal is not properly before us. I would therefore dismiss the appeal. *Thompson* v. *Whittier,* 365 U. S. 465. The Court, however, holds that this appeal is properly here, and on the merits of the litigation I agree with the Court's conclusion.

Mr. Chief Justice Warren, dissenting.

We are confronted here with a threshold question of jurisdiction which should, in my opinion, be dispositive of the case. The question is whether a three-judge court was properly convened for the trial of this case.[1] Although the issue was not considered by the courts below, and has not been raised by the parties here, it is our duty to take independent notice of such matters and to vacate and remand any decree entered by an improperly constituted court.[2] I cannot agree with the test formulated by the opinion of the Court because I believe that for both lower federal courts and for ourselves, it will raise more problems than it will solve, and because I do not see any basis for it either in the statute or in our prior decisions.

When to convene a three-judge court has always been a troublesome problem of federal jurisdiction and a review of the cases involving that question illustrates the difficulties the lower federal courts have had in applying the principles formulated by this Court.[3] However, one rule has been clear: where a state statute is attacked as violating directly some provision of the Federal Constitution, a three-judge court must be convened.[4] Equally clear has been the principle that where the state statute is alleged to be inoperative because of the presence of a

---

[1] Pursuant to 28 U. S. C. § 2281, providing for a three-judge court where an injunction is sought against the enforcement of a state statute upon the ground of its alleged unconstitutionality.

[2] *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.*, 292 U. S. 386; *Gully* v. *Interstate Gas Co.*, 292 U. S. 16. Direct appeal from a three-judge court is governed by 28 U. S. C. § 1253.

[3] See the cases collected in Hart and Wechsler, The Federal Courts and the Federal System, 843 *et seq.* See also Ann., Three-Judge Court, 4 L. Ed. 2d 1931 *et seq.*

[4] *Query* v. *United States*, 316 U. S. 486; *Stratton* v. *St. Louis Southwestern R. Co.*, 282 U. S. 10; *Ex parte Northern Pac. R. Co.*, 280 U. S. 142.

176

federal statute which the Supremacy Clause of the Constitution declares pre-emptive of the state law, a single judge may dispose of the case.[5] That, I submit, is precisely the situation here. A case essentially similar to ours is *Case v. Bowles,* 327 U. S. 92. There the State had enacted a provision regulating the minimum price at which certain state-owned land had to be sold when disposed of by the State. When the State attempted to sell timber located on such land at a price permitted by the state enactment, the sale was sought to be enjoined on the ground that the price required by the state law exceeded the limits of the Federal Emergency Price Control Act and was therefore invalid under the Supremacy Clause. To the State's contention that the complaint stated a cause of action required to be heard by a three-judge court, this Court, speaking through MR. JUSTICE BLACK, stated:

> ". . . here the complaint did not challenge the constitutionality of the state statute but alleged merely that its enforcement would violate the Emergency Price Control Act. Consequently a three-judge court is not required. . . ."[6]

So in the case before us, "the complaint did not challenge the constitutionality of the . . . [Utah Financial Responsibility Act] but alleged that its enforcement would violate the . . . [Bankruptcy Act]. Consequently, a three-judge court . . . [was] not required."

---

[5] *Florida Lime & Avocado Growers, Inc.,* v. *Jacobsen,* 362 U. S. 73 (by implication); *Case* v. *Bowles,* 327 U. S. 92; *Ex parte Buder,* 271 U. S. 461; *Lemke* v. *Farmers Grain Co.,* 258 U. S. 50. The lower federal courts have also been unanimous in so holding. *E. g., Bell* v. *Waterfront Commission,* 279 F. 2d 853; *Penagaricano* v. *Allen Corp.,* 267 F. 2d 550; *Cloverleaf Butter Co.* v. *Patterson,* 116 F. 2d 227, rev'd on other grounds, 315 U. S. 148; *Pennsylvania Greyhound Lines, Inc.,* v. *Board of Public Utility Comm'rs,* 107 F. Supp. 521.

[6] 327 U. S., at 97.

However, the Court's opinion adds an additional distinction. Its reasoning is that if there is a preliminary question of statutory construction, either of the state or federal statute alleged to be in conflict, only one judge is required. On the other hand, if the court is able to go "directly" to the constitutional question (*i. e.*, whether the state statute must fall under the Supremacy Clause), three judges are required. I do not believe that there was any greater need for interpretation of the statute or of congressional purpose in *Bowles* than there is in determining the scope of the Bankruptcy Act in providing for the discharge of debts in the case before us. I can find no real distinction between the two cases and do not believe that one can be found in the statutes [7] or any place else. It would, in fact, be difficult to conceive of any case which would not call for an initial interpretation of the legislation or an inquiry into its purpose or policy before a court could determine if the state and federal statutes are in conflict.[8] The instant case is no exception, and, in my opinion, the Court's opinion refutes the very test which it establishes.[9] The difference of opinion

---

[7] The sole determination for convening a three-judge court is whether the state statute is being attacked on the grounds of its unconstitutionality. 28 U. S. C. § 2281. The statute makes no distinction based on the absence of preliminary questions of interpretation. Moreover, this Court has, in the past, attempted to construe this statute rigidly because of our reluctance to enlarge our own mandatory duties of review and because of the serious drain that "the requirement of three judges . . . entails . . . upon the federal judicial system. . . ." *Phillips* v. *United States*, 312 U. S. 246, 250.

[8] See note 13, *infra*.

[9] A great portion of the Court's opinion is devoted to a review of the purpose and intent of state-highway financial-responsibility laws. In addition, the Court considers, as it must, the scope of § 17 of the Bankruptcy Act. See *ante*, pp. 169–171. The Court concludes that there are "overlapping interests" between the two pieces of legislation that need resolution. See *ante*, p. 171.

on the merits in this case among the members of the Court stems from the meaning and purpose of § 17 of the Bankruptcy Act,[10] and it is evident that the Court's holding in *Reitz* v. *Mealey*,[11] referred to by the Court in the instant case, considered the purposes of both the state legislation and the federal bankruptcy scheme. Indeed, the effect of the discharge in bankruptcy affords considerable latitude for construction, as noted by this and other courts on numerous occasions.[12]

Moreover, I believe that it is tacit in the Supremacy Clause itself that a preliminary inquiry must always be made into the policy behind the legislation alleged to be in conflict before a final analysis of whether the federal legislation is pre-emptive can be made.[13] But perhaps the most practical objection to the test formulated by the Court is that it is plainly unworkable. Application of that test by lower federal courts will, in my opinion, create additional confusion to an already difficult area of federal jurisdiction. Because I think that we should

---

[10] As amended, 52 Stat. 851, 11 U. S. C. § 35. This Section provides in part, "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part . . . ."

[11] 314 U. S. 33.

[12] See *Zavelo* v. *Reeves*, 227 U. S. 625; *Spalding* v. *New York ex rel. Backus*, 4 How. 21 (1846) (decided under an earlier bankruptcy law); *Parker* v. *United States*, 153 F. 2d 66; *In re Koronsky*, 170 F. 719; cf. *Crawford* v. *Burke*, 195 U. S. 176; *Tinker* v. *Colwell*, 193 U. S. 473.

[13] The application of the Supremacy Clause is increasingly becoming a matter of statutory interpretation—a determination of whether state regulation can be reconciled with the language and policy of federal legislation. See, e. g., *United States* v. *Burnison*, 339 U. S. 87; *Rice* v. *Santa Fe Elevator Corp.*, 331 U. S. 218; *Southern Pacific Co.* v. *Arizona*, 325 U. S. 761. Cf. *Auto Workers* v. *Wisconsin Employment Relations Board*, 336 U. S. 245. Thus, the answers to questions put under the Supremacy Clause must largely be derived from the statute and the policy behind the federal legislation. See note 18, *infra*.

follow our past decisions,[14] and not impose technical and unworkable distinctions upon them, I would dismiss this case for lack of jurisdiction in this Court.[15] However, because the Court has held otherwise and has decided the merits of the alleged conflict, I believe it is my duty also to reach the substantive questions.

On the merits, I find myself in agreement with most of MR. JUSTICE FRANKFURTER's opinion for the Court. State drivers' financial-responsibility laws intended to discourage careless driving and to promote safety in automobile traffic for the protection of its citizens are essential to the State's well-being and wide latitude should be allowed in the formulation of such laws. Accordingly, I am reluctant to say that a State has exceeded its powers in this area. I cannot, however, agree with the Court's treatment of that portion of the Utah Act which gives to a creditor the discretion of determining if and when driving privileges may be restored by the State to a person whose license has been revoked due to his failure to satisfy a judgment incurred as a result of a previous automobile accident.[16]

The essential inquiry in a case such as this is not only whether the State has acted in a field in which it has a legitimate interest to achieve goals inherent in its police power. Rather, our task is also to ascertain whether the provisions of the state act are compatible with the policy expressed in the federal legislation with which the state law is alleged to be in conflict.[17] If there is no escape

---

[14] See note 5, supra.

[15] 28 U. S. C. § 1253. See Phillips v. United States, 312 U. S. 246.

[16] Thus, I believe that without the "subject to" clause of Utah Code Ann., 1953, § 41–12–15, referring to the creditor-control provision of § 41–12–14 (b), that Section would be valid.

[17] Certainly the "complicated demands of federalism" cannot prevent us from fulfilling this duty. In fact, the Constitution expressly provides that in this area of federal-state relations these complicated demands shall play no part. U. S. Const., Art. VI.

from a finding of incompatibility, the Supremacy Clause
of the United States Constitution demands that the con-
flicting state law and policy must yield to the federal
statute.[18]   This demand is made no less apparent by a
determination that the state statute has been enacted
pursuant to an otherwise valid exercise of state power.[19]

In *Reitz* v. *Mealey,* 314 U. S. 33, this Court upheld the
New York variant of this legislation, according to the
Court's opinion in the instant case, "[b]ecause the statute
was not designed to aid collection of debts but to enforce
a policy against irresponsible driving, and because this
policy would be frustrated if negligent drivers could avoid
the statute by 'the simple expedient of voluntary bank-
ruptcy' . . . ."   Here, however, the Court decides a ques-
tion that was deliberately not canvassed in *Reitz,* namely,
the validity of the provision authorizing creditor control
over restoration of the license.

In my view, the reasons expressed for upholding the
New York legislation in *Reitz* do not apply to this
authorization.[20]   The State has a legitimate interest in
requiring proof of financial responsibility from drivers

---

[18] *Sola Electric Co.* v. *Jefferson Electric Co.,* 317 U. S. 173, 176;
*Hill* v. *Florida,* 325 U. S. 538.

[19] See, *e. g., Rice* v. *Santa Fe Elevator Corp.,* 331 U. S. 218, 230–
231; *Case* v. *Bowles,* 327 U. S. 92, 101–102; *Napier* v. *Atlantic Coast
Line R. Co.,* 272 U. S. 605, 610–611.   See also *Munn* v. *Illinois,* 94
U. S. 113.   Cf. *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761.

[20] The creditor controls in the revocation and restoration provisions
are completely distinguishable, and I find no fault with that portion
of the Act permitting the creditor to give notice of default in payment
so as to initiate the revocation procedure.   As to this strictly "pro-
cedural" provision, Judge Hand's pronouncement in the lower court's
opinion in *Reitz* v. *Mealey,* 34 F. Supp. 532 (D. C. N. D. N. Y. 1940),
is dispositive.   However, for the reasons next stated in the text, the
creditor control over restoration does not serve a procedural purpose;
it is directly a matter of substance and, as such, it changes the whole
purpose of the legislation.

who have not responded in damages for an accident; and inherent in that interest is the right to demand as a requisite to restoration of driving privileges, that all prior judgments for automobile accidents be paid.[21]   To this extent the State advances an interest independent of the purposes of the bankruptcy laws; the interests of the federal and state governments are compatible and hence no conflict with the Federal Act exists.   However, where the State relinquishes its right to demand that prior judgments be paid, and in its place authorizes the creditor, through giving or withholding his consent to determine whether the judgment debtor may be restored to his driving privileges, the purposes of the financial-responsibility laws are no longer being served.   Instead of the legitimate determination to keep all negligent financially irresponsible drivers off the highways, the State is, ostensibly through its police power, giving the creditor a powerful collection device for recovery of a discharged debt.[22] The emphasis has been shifted to an entirely different purpose and, in my opinion, this change is crucial.   The effect of the law is to authorize a private individual, for his own financial interest, to determine whether and when a bankrupt may drive on the State's highways.   In departing from its legitimate interest in promoting high-

---

[21] See note 16, *supra*.   See also, *e. g.*, Cal. Vehicle Code, 1959, Div. 7, § 16371.

[22] This aid is being given solely for the creditor's benefit.   The State is in effect saying that it does not have an interest in preventing drivers who have been unable to meet their financial obligations from using the highways—as far as the State is concerned some may and others may not.   The choice is delegated to the creditors.   Hence, creditor X may have two outstanding judgments owing from two different individuals who have caused him damage in a highway accident.   Although the State unquestionably has an equal interest in either allowing or disallowing use of the highway by these two debtors, X has the sole discretion to say to the State "Debtor A may have his license back, but debtor B may not."

way safety and thus substituting the interests of individual creditors, the State brings its law into direct conflict with the policy of the federal statute which is designed to relieve bankrupt debtors from their prior financial obligations. In these circumstances I believe it is our duty to declare that portion of the state law invalid under the Supremacy Clause of the United States Constitution.

This does not mean that I would strike the entire statute; the Utah Act incorporates a separability clause [23] which has never been interpreted by the Supreme Court of Utah. How it would view this situation cannot be foretold, and it is not within our province to undertake to do so. At all events, no great burden would be placed on the State. All it need do is to assume in its own way its responsibilities for determining which drivers should be entrusted to use its highways rather than to delegate that power to a private judgment creditor whose debtor has been discharged of his debt by federal law.

For the reasons stated, I must dissent.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS concurs, dissenting.

I agree that this case was properly heard by a three-judge District Court but dissent from the Court's holding that Utah may, through its Motor Vehicle Safety Responsibility Act, enforce the payment of a judgment already discharged under the Federal Bankruptcy Act. Section 17 of the Bankruptcy Act provides that "discharge in bankruptcy shall release a bankrupt from all of his provable debts" [1] and this Court has held that a tort judgment, such as that against appellant, arising out of an automobile accident, is a provable debt within the meaning

---

[23] Utah Code Ann., 1953, § 41–12–40.

[1] 11 U. S. C. § 35.

of that section.[2] Despite this provision, however, the Court upholds a Utah law which expressly provides that "A discharge in bankruptcy following the rendering of any . . . judgment [arising out of an automobile accident] shall not relieve the judgment debtor" of his obligation to pay that judgment as a condition of avoiding permanent cancellation of his driving license.[3] The effect of enforcement of the Utah law against this appellant is to deny him the federal immunity given by § 17 of the Bankruptcy Act—an effect which makes the law of Utah rather than the law of Congress "the supreme Law of the Land." This is true because the plain and inevitable effect of the Utah statutory scheme is to create a powerful weapon for collection of a debt from which this bankrupt has been released by federal law. And particularly where, as here, the bankrupt's very livelihood depends upon his retaining a driver's license, he has no real choice under this Utah statute but to make arrangements to pay his judgment creditor to avoid permanent loss of his license. That, of course, means that he must agree to pay the very debt from which he was discharged by the bankruptcy proceeding, and that he must forego the very benefits for which Congress passed the Bankruptcy Act. It also means that a Utah automobile-accident judgment creditor will be given a decided advantage over all other creditors suffering loss from the bankruptcy in that only he can prove his claim, share in the distribution of the bankrupt's estate and still, at the same time, retain the power to force the bankrupt to pay the rest of his claim.

This action of the State, which takes away the benefits conferred on the bankrupt by Congress in § 17 of the

[2] *Lewis* v. *Roberts,* 267 U. S. 467.

[3] Section 41–12–15 of the Utah Motor Vehicle Safety Responsibility Act, Utah Code Ann., 1953.

Bankruptcy Act and gives special privileges to one class of creditors, cannot, in my judgment, be justified by reference to any "complicated demands of our federalism." There are plenty of ways for the States to protect their highways from reckless and irresponsible drivers without running roughshod over immunities that the United States, acting through a specifically granted, exclusive federal power, has chosen to give its citizens. But even if there were not such ways, I see no reason why the Court is not required to settle this conflict between Utah law and federal law in the way that the Constitution requires all such conflicts to be decided—that is, by a simple application of the Supremacy Clause of the Federal Constitution. The Court chooses instead to uphold the law of Utah on the basis of its previous decision in *Reitz* v. *Mealey*,[4] a decision which I thought then and still think now to be wrong even on the much narrower statute which was sustained on much narrower grounds in that case. If this case involved the same kind of limited statute upheld in *Reitz* I could acquiesce on the ground that the settled construction of a federal statute should not ordinarily be disturbed.[5] I can see no justification, however, for expanding the holding in that case so as to uphold this statute which makes a far more serious state encroachment upon immunities granted by discharge in federal bankruptcy proceedings.[6]

The Bankruptcy Act serves a highly important purpose in American life. Without the privileges it bestows on helplessly insolvent debtors to make a new start in life, many individuals would find themselves permanently

---

[4] 314 U. S. 33.

[5] *Toolson* v. *New York Yankees*, 346 U. S. 356. See also *James* v. *United States*, 366 U. S. 213, 230–235 (separate opinion concurring in part and dissenting in part).

[6] Cf. *United States* v. *International Boxing Club*, 348 U. S. 236; *Still* v. *Norfolk & Western R. Co.*, 368 U. S. 35.

crushed by the weight of obligations from which they could never hope to remove themselves and the country might, therefore, be deprived of the value of the endeavors of many otherwise useful citizens who simply would have lost their incentive for constructive work. I cannot agree with a decision which leaves the States free—subject only to this Court's veto power—to impair such an important and historic policy of this Nation as is embodied in its bankruptcy laws. I therefore respectfully dissent.