CITY OF ST. PETERSBURG, etc., and Jack Puryear, as Director of the Bureau of Recreation of the City of St. Petersburg, Florida, Appellants,

v.

Fred ALSUP et al., Appellees.

No. 16100.

United States Court of Appeals
Fifth Circuit.

Dec. 19, 1956.

Harry I. Young, Asst. City Atty., Lewis T. Wray, City Atty., Frank D. McDevitt, Asst. City Atty., St. Petersburg, Fla., for appellants.

Francisco A. Rodriguez, Harold A. Jackson, Tampa, Fla., for appellees.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

The district court enjoined the appellants from refusing to allow the appellees and other negroes similarly situated to use the municipal beach and swimming pool on the same basis as white citizens of the municipality. On the authority of Dawson v. Mayor and City Council of City of Baltimore, 4 Cir., 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, the judgment should be affirmed, unless the cases are distinguishable.

 The distinction urged by appellants is that the City of Baltimore operates its parks and swimming facilities in its governmental capacity,[1] while the City of St. Petersburg operates its swimming pool and beach in its proprietary capacity.[2] Further elaborating their position, the appellants argue in brief:

"The appellant City operates the Municipal Spa Beach and swimming pool involved in this litigation in its proprietary capacity. Under the decisions of the Courts it has not only the right but the duty to operate this pool and beach as a business enterprise and for the best interest of the inhabitants of the

1. Mayor and City Council of Baltimore v. State, for Use of Blueford, 173 Md. 267, 195 A. 571.

2. Town of Riviera Beach v. State, Fla., 53 So.2d 828; Pickett v. City of Jacksonville, 155 Fla. 439, 20 So.2d 484; Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924; City of Tampa v. Easton, 145 Fla. 188, 198 So. 753; State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300; City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744; Hamler v. City of Jacksonville, 97 Fla. 807, 122 So. 220.

City who are stockholders, so to speak, in this enterprise.

"The answer avers in substance that the City operated a negro pool in the very heart of the negro area and that said pool operated at a considerable financial loss and was finally forced to close for lack of patronage. It is further alleged that, due to a long social practice and custom, if negroes were admitted to the beach and pool in controversy, white patronage would cease or practically cease and that the City would be forced to close this pool as it would not have sufficient funds to continue its operations.

"If the City is to be charged with the duty and given the legal right to operate this utility as a private business and for the best interest of the inhabitants of the City, the 14th Amendment has no application. It certainly cannot be said that a forced closing of the pool would be for the best interest of anyone.

"To hold that the 14th Amendment of the Constitution is applicable to a city operating in its proprietary capacity in the light of the numerous decisions defining this method of operation would be to read into the 14th Amendment something that simply is not there, nor ever was intended to be there."

It becomes obvious, at once, that if appellants' contention be accepted, the Constitution would operate with different effect in Maryland and in Florida; and probably also in various other states. The same contention has been unsuccessfully urged to shield municipalities from their own states and was thus answered in City of Trenton v. State of New Jersey, 262 U.S. 182, 191–192, 43 S.Ct. 534, 538, 67 L.Ed. 937:

"The distinction between the municipality as an agent of the state for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of municipal corporations. The most numerous illustrations are found in cases involving the question of liability for negligent acts or omissions of its officers and agents. See Harris v. District of Columbia, 256 U.S. 650, 41 S.Ct. 610, 65 L.Ed. 1146, and cases cited. It has been held that municipalities are not liable for such acts and omissions in the exercise of the police power, or in the performance of such municipal faculties as the erection and maintenance of a city hall and courthouse, the protection of the city's inhabitants against disease and unsanitary conditions, the care of the sick, the operation of fire departments, the inspection of steam boilers, the promotion of education and the administration of public charities. On the other hand, they have been held liable when such acts or omissions occur in the exercise of the power to build and maintain bridges, streets and highways, and waterworks, construct sewers, collect refuse and care for the dump where it is deposited. Recovery is denied where the act or omission occurs in the exercise of what are deemed to be governmental powers, and is permitted if it occurs in a proprietary capacity. The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class. It originated with the courts. Generally it is applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporations. But such distinction furnishes no ground for the application of constitutional restraints here sought to be invoked by the city of Trenton against the state of New Jersey. They do not apply as against the state in favor of its own municipalities. We hold that

the city cannot invoke these provisions of the federal Constitution against the imposition of the license fee or charge for diversion of water specified in the state law here in question." (Marginal footnotes omitted.)

The fact that under West Virginia decisions municipal operation of a swimming pool was a proprietary activity has been held by a district court not to alter the constitutional right of an individual citizen to equality of opportunity in the use of the pool. Lawrence v. Hancock, D.C.S.D.W.Va., 76 F.Supp. 1004, 1008.

A state cannot, by judicial decision or otherwise, remove any of its activities from the inhibitions of the Fourteenth Amendment. See Nixon v. Condon, 286 U.S. 73, 88, 52 S.Ct. 484, 76 L.Ed. 984. It is doubtful whether a municipality [3] may ever engage in purely private action that would not be action of the state. See In re Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149. Certainly this is not such a case. In its operation of the municipal beach and swimming pool the City of St. Petersburg comes squarely within the broad class long ago defined in Ex parte Virginia, 100 U.S. 339, 347, 25 L.Ed. 676:

"Whoever, by virtue of public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State. This must be so, or the constitutional prohibition has no meaning. Then the State has clothed one of its agents with power to annul or to evade it."

It is no answer to say that the beach and pool cannot be operated at a profit on a nonsegregated basis, and that the City will be forced to close the pool. Of course, financial loss cannot justify illegal operation; and, unfortunate as closing the pool may be, that furnishes no ground for abridging the rights of the appellees to its use without discrimination on the ground of race so long as it is operated. Department of Conservation and Development v. Tate, 4 Cir., 231 F.2d 615, 616.

The judgment is therefore

Affirmed.

---

3. Except possibly in some fiduciary capacity. See Estate of Girard, Pa., 127 A.2d 287.