Joseph DORSEY, Jr., Plaintiff,

v.

STATE ATHLETIC COMMISSION,
Defendants.

Civ. A. No. 5247.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 28, 1958.

———◆———

Louis Berry, Albion R. Ricard, Jr.,
New Orleans, La., for plaintiff.

W. P. Schuler, New Orleans, La., for
defendants.

Before WISDOM, Circuit Judge, and CHRISTENBERRY and WRIGHT, District Judges.[1]

WISDOM, Circuit Judge.

Joseph Dorsey, Jr., is a Negro prizefighter. He brings this suit in his own behalf and in behalf of all other Negro professional prizefighters similarly situated. He asks for a declaratory judgment and an injunction to restrain the Louisiana State Athletic Commission from enforcing a regulation and a statute prohibiting athletic contests between Negroes and whites.

The State Athletic Commission is an agency of the State of Louisiana with "full authority, regulation and control over all boxing and wrestling contests or exhibitions in the state". LSA–R.S. 1950, 4:61; Act 336 of 1950.

Rule 26 of the Rules and Regulations adopted by the Commission provides:

"There shall be no fistic combat match, boxing, sparring, or wrestling contest or exhibition between any person of the Caucasian or 'white' race and one of the African or 'Negro' race; and, further, it will not be allowed for them to appear on the same card."

Dorsey's original petition, filed July 28, 1955, attacked Rule 26 as unconstitutional. In 1956 the Louisiana legislature enacted Act 579 (LSA–R.S. 4:451 et seq.). This law prohibits "interracial activities involving personal and social contacts", including "games, sports or contests", and requires separate seating at any entertainment or athletic contest. May 24, 1957, Dorsey filed an amendment to his petition, attacking the constitutionality of Section 1 of this law.[2] Section 1 of the Act reads:

"§ 451. Interracial activities involving personal and social contacts prohibited

"All persons, firms and corporations are prohibited from sponsoring, arranging, participating in, or permitting on premises under their control any dancing, social functions, entertainments, athletic training, games, sports or contests and other such activities involving personal and social contacts, in which the participants or contestants are members of the white and negro races. Acts 1956, No. 579, § 1."

There is no factual dispute. Dorsey was issued a license for 1957. He has no license for 1958, but the Commission's

---

1. 28 U.S.C.A. § 2284.

2. The other sections of Act 579 are:
"§ 452. Separate seating and facilities
"At any entertainment or athletic contests, where the public is invited or may attend, the sponsors or those in control of the premises shall provide separate seating arrangements, and separate sanitary, drinking water and any other facilities for members of the white and negro races, and to mark such separate accommodations and facilities with signs printed in bold letters. Acts 1956, No. 579, § 2.
"§ 453. Races prohibited from using the others seating and facilities.
cilities.
"White persons are prohibited from sitting in or using any part of seating arrangements and sanitary or other facilities set apart for members of the negro race; and members of the negro race are prohibited from sitting in or using any part of seating arrangements and sanitary or other facilities set apart for white persons. Acts 1956, No. 579, § 3.
"§ 454. Penalty
"Any person, firm or corporation violating the provisions of this chapter shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than $100.00 or more than $1,000.00 and imprisoned for not less than 60 days nor more than 1 year. Acts 1956, No. 579, § 4.
"§ 455. Construction; effective date; religious gatherings exempt
"This chapter is passed in the exercise of the state police power to regulate public health, morals and to maintain peace and good order in the state and shall be so construed. This chapter shall not become effective until the fifteenth (15th) day of October, 1956. None of the provisions of this chapter shall be construed to apply to religious gatherings, services or functions. Acts 1956, No. 579, § 5."

policy is to issue a license to a prize-fighter only on the date of a scheduled fight and then only after the fight has been held and the boxer's license fee deducted from his share of the purse. The Commission admits the essential allegations of fact of Dorsey's complaint and admits also that it would not allow Dorsey to engage in a mixed prizefight in Louisiana.

I.

The Commission contends that the court has no jurisdiction, on the ground that Dorsey's suit is in effect a suit against the State of Louisiana; and the Eleventh Amendment protects a state against being sued without its consent. In any event, the Commission argues, the plaintiff must sue state officials in their individual capacity; citing Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714. Here, Dorsey has not sued members of the Commission individually.

 This question has been raised in several segregation suits. See School Board of the City of Charlottesville, Va. v. Allen, 4 Cir., 1956, 240 F.2d 59. This Court dealt with the problem in Orleans Parish School Board v. Bush, 5 Cir., 242 F.2d 156, 161, certiorari denied, 1957, 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436. The short answer to the Commission's contention is that Dorsey's suit is not against the State of Louisiana, in name or in effect. It does not attempt to compel state action, but to prevent illegal action of the Commission. As Judge Tuttle stated in the Bush case: "If in fact the laws under which the board here purports to act are invalid, then the board is acting without authority from the State and the State is nowise involved." A state can act only through agents. Whether the agent is an individual official or a Commission, the agent ceases to represent the state when state power is used in violation of the United States Constitution.

█ There is no merit to the defendant's contention that the plaintiff should have sued the members of the boxing Commission individually. We agree with the court in School Board of City of Charlottesville v. Allen that, [240 F.2d 63] "if high officials of the state and of the federal government may be restrained and enjoined from unconstitutional action, we see no reason why a school board [or any other state Commission] should be exempt from such suit merely because it had been given corporate powers". In Browder v. Gayle, D.C., 142 F.Supp. 707, affirmed 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114, the court indicated that it is not necessary to sue the members of a Commission individually when no special relief is sought against them by way of damages. In the case before us the plaintiff is seeking relief from action of the state's agent, the State Athletic Commission, in its collective capacity as a commission.

II.

In the School Segregation Cases (Brown v. Board of Education of Topeka), 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, the Supreme Court held that classification based on race is inherently discriminatory and violative of the Equal Protection Clause of the Fourteenth Amendment. This principle, originally stated with respect to children in public schools, has been applied to classification based on race at golf courses,[3] parks,[4] beaches and swimming pools,[5] and in buses and streetcars.[6] The application of the principle does not depend purely upon the fact that the school or the park is publicly owned; it rests on the fact that the discriminatory classification is enforced by state officials or

3. Holmes v. City of Atlanta, 5 Cir., 1955, 223 F.2d 93.

4. Department of Conservation & Development, Division of Parks, Com. of Va. v. Tate, 4 Cir., 1956, 231 F.2d 615.

5. City of St. Petersburg v. Alsup, 5 Cir., 1956, 238 F.2d 830; Dawson v. Mayor and City Council of Baltimore City, 4 Cir., 1955, 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774.

6. Morrison v. Davis, 5 Cir., 1958, 252 F. 2d 102; Browder v. Gayle, D.C., 1956, 142 F.Supp. 707, affirmed 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114.

state agencies. The Supreme Court has consistently defined state action as including action of any agency of the state at any level of government.[7]

The Commission relies on the argument that the rule and statute were adopted under the State's police power as a necessary measure to preserve peace and good order. Section 5 of Act 579 expressly states that: "This Act is passed in the exercise of the State Police Power to regulate public health, morals and to maintain peace and good order in the State and shall be so construed." The same argument was made in Orleans Parish School Board v. Bush. Judge Tuttle for the Court of Appeals for the 5th Circuit answered the argument [242 F.2d 163]:

> "The use of the term police power works no magic in itself. Undeniably the States retain an extremely broad police power. This power, however, as everyone knows, is itself limited by the protective shield of the Federal Constitution."

Dawson v. Mayor and City Council of Baltimore City was a suit by Negroes to enjoin enforcement of segregation at public beachhouses and bathhouses maintained by State and City authorities. The City of Baltimore argued that separation of races in public parks and beaches was customary in Maryland and necessary for the preservation of order. The Court of Appeals for the 4th Circuit held [220 F.2d 386, 387]: "It is now obvious, however, that segregation cannot be justified as a means to preserve the public peace merely because the tangible facilities furnished to one race are equal to those furnished to the other."

The principles set forth in Orleans Parish School Board v. Bush, and Dawson v. Mayor and City Council of Baltimore City are not confined to opinions in the Federal Reporter. Harvey v. Morgan[8] is a Texas case that is strikingly similar to the instant case. The Texas Penal Code prohibited "any fistic combat match boxing, sparring or wrestling contest or exhibition between any person of the Caucasian or 'White' race and one of the African or 'Negro' race". [272 S.W.2d 621, 622] This language is identical with the language in Rule 26 adopted by the State Athletic Commission of Louisiana. "Sporty" Harvey, a Negro boxer, sued the Commissioner charged with administering the Act, seeking a declaratory judgment and mandatory injunction. The Court held that the Commissioner's rules and the Texas statute prohibiting white-Negro fights constituted state action in violation of the Fourteenth Amendment and the Federal Civil Rights Act, 18 U.S.C.A. § 241 et seq. The Texas Court conceded that professional boxing is an activity subject to rigid regulation under police powers reserved to the State, but observed that "every State power, however, including the police power, is limited by the inhibitions of the Fourteenth Amendment. * * * Even if riotous conditions did result from mixed boxing exhibitions we doubt if this statute would be sustained by the Federal Supreme Court in view of language which we find in some of its opinions".

### III.

Act 579 does not raise difficult issues involving the meaning of a law or the unconstitutional application of a statute apparently constitutional. Act 579 is not intended to circumvent desegregation by clever verbiage or by adroit administrative techniques. Act 579 is in the teeth of the School Segregation Cases, Broun v. Board of Education of Topeka, and other cases stemming from that decision; a clear challenge to the validity of those cases when a state legislature invokes the police power. In these circumstances this Court must hold with the plaintiff that, as to athletic contests,

---

7. State of Virginia v. Rives, 1880, 100 U.S. 313, 25 L.Ed. 667; Chicago, B. & Q. Railroad Co. v. City of Chicago, 1897, 166 U.S. 226, 17 S.Ct. 581, 41 L. Ed. 979; Com. of Pa. v. Board of Direc-

tors of City Trusts of City of Philadelphia (In re Estate of Girard), 1957, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792.

8. Tex.Civ.App., 1954, 272 S.W.2d 621.

Act 579 of 1956 is unconstitutional on its face in that separation of Negroes and whites based solely on their being Negroes and whites is a violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. Rule 26 is of course no less unconstitutional.

We hold therefore that the plaintiff and other Negro prizefighters similarly situated are entitled to a temporary injunction restraining the State Athletic Commission of Louisiana from enforcing its Rule 26 and Act 579, insofar as Rule 26 and Act 579 prohibit the plaintiff and other Negro fighters from engaging in boxing contests with white fighters or appearing on the same card with white fighters.

### Judgment of Injunction

This cause came on for hearing on application of the plaintiff for a declaratory judgment and a temporary injunction. The Court, having carefully considered the arguments of counsel and the record made in this cause, and being of the opinion that the plaintiff should be granted the relief prayed for in his complaint:

It is ordered, adjudged, and decreed that Rule 26 of the Rules and Regulations of the State Athletic Commission of Louisiana and Act 579 of 1956 of the Louisiana State Legislature (LSA–R.S. 4:451 et seq.) are unconstitutional insofar as they attempt to prohibit athletic contests between negroes and whites based solely on the contestants' race or color.

It is further ordered, adjudged, and decreed that the defendant, State Athletic Commission, its officers, agents, servants, employees, and attorneys, and their successors in office, and those in concert with them who shall receive notice of this order, be and they are hereby restrained and enjoined from enforcing Rule 26 of the Rules and Regulations of the State Athletic Commission or any similar rule now or in the future enacted by the State Athletic Commission, and also from enforcing Act 579 of 1956

(LSA–R.S. 4:451 et seq.), insofar as the rules of the Commission and Act 579 attempt to prohibit the plaintiff or other Negroes similarly situated from engaging in boxing contests and exhibitions with white fighters or appearing on the same card with white fighters solely on account of the fighters' or contestants' race or color.

Jurisdiction of this cause is retained for the purpose of giving full effect to this judgment and for the purpose of making such further orders and decrees, or taking such further action, if any, as may become necessary or appropriate to carry out and enforce this Court's judgment.