**James T. McCAIN, Plaintiff,**

v.

**James H. DAVIS et al., Defendants.**

**Daisy BATES, Plaintiff,**

v.

**SHERATON CORPORATION OF AMERICA, a Corporation, et al., Defendants.**

**Civ. A. Nos. 12937, 12940.**

United States District Court
E. D. Louisiana,
New Orleans Division.

May 15, 1963.

Benjamin E. Smith, Robert Collins, Nils R. Douglas, Alvin B. Jones, New Orleans, La., for plaintiff, James T. McCain.

A. P. Tureaud, Ernest N. Morial, A. M. Trudeau, Jr., New Orleans, La., Leroy D. Clark, New York City, for plaintiff, Daisy Bates.

L. K. Clement, Jr., Henry J. Roberts, Jr., Asst. Attys. Gen., for state of Louisiana.

Waverly A. Henning, Gretna, La., for Frank H. Langridge in Civ. A. 12940.

Harry McCall, Jr., New Orleans, La., for Hilton Inns, Inc. and Sheraton Corp. of America.

Ernest L. Salatich, Beuker Amann, New Orleans, La., for Jos. Giarrusso, Victor H. Schiro, James H. Fitzmorris, and others.

Dean A. Andrews, New Orleans, La., for John J. Fitzgerald, Sheriff of Jefferson Parish in Civ. A. 12940.

Robert E. LeCorgne, Jr., New Orleans, La., for Royal Orleans, Inc.

Frank J. Shea, Philip J. Foto, New Orleans, La., for Jim Garrison.

Before WISDOM, Circuit Judge, and CHRISTENBERRY and WEST, District Judges.

WISDOM, Circuit Judge.

These two cases raise an important Fourteenth Amendment question: the applicability of the Equal Protection and Due Process Clauses to a state law forbidding "white" hotels to provide accommodations for Negroes. It was in the cards that sooner or later the question would someday be put to the Court. It was in the cards too that the Court would give the answer we give here.

The Negro plaintiffs in these two class actions allege that certain New Orleans hotels, acting under the compulsion of a Louisiana criminal statute, LSA–R.S. 14:317, refused them accommodations because they were Negroes. The defendant hotel companies admit this. They say that the statute gave them no alternative.

Each complaint joins as co-defendants certain public officials responsible for law enforcement. These officials neither affirm nor deny the plaintiffs' allegations of fact. The State of Louisiana, through the Attorney General, and the Sheriff and the District Attorney of Jefferson Parish construe the law as inapplicable to hotels. The City of New Orleans, the Superintendent of Police, and the District Attorney for the Parish of Orleans argue that the statute applies to hotels and contend that it is constitutional.

The plaintiffs ask for a declaratory judgment declaring LSA–R.S. 14:317 unconstitutional and for a preliminary and permanent injunction enjoining the defendants from acting under LSA–R.S. 14:317 to deny accommodations to Negroes at hotels. On the application of plaintiff McCain, a three-judge court was invoked and convened under 28 U.S.C. §§ 2281 and 2284. Plaintiff Bates opposes such a court on the ground that there is no substantial question as to the unconstitutionality of the statute. Because of common questions of law arising from substantially similar fact-patterns, the cases were consolidated. All of the parties stipulated to submit the case on the admissions in the pleadings. May 3, 1962, in open court, with all of the parties present through counsel, the three-judge court heard oral argument on the legal issues.

The Court dismisses the members of the Commission Council of the City of New Orleans as parties defendant, individually and as Councilmen, because individually and collectively they are unable to give the relief sought. The Court holds that LSA–R.S. 14:317 is unconstitutional and, except as to the members of the Commission Council, grants the injunction as prayed for by the plaintiffs.

I.

The Court has misgivings as to the necessity for a three-judge Court.

■■ The Supreme Court has held that when the first issue is one of "[S]tatutory construction even though perhaps eventually leading to a constitu-

tional question", the case should be decided by a single judge. Kesler v. Department of Public Safety, 1962, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641. The three-judge procedure is a drain on federal judicial manpower, and should not be invoked on a constitutional question that is merely contingent. See, for example, International Ladies' Garment Workers Union v. Donnelly Garment Co., 1938, 304 U.S. 243, 251, 58 S.Ct. 875, 82 L.Ed. 1316. Moreover, Section 2281 does not require a three-judge court when there is no substantial constitutional question. Turner v. Memphis, 1962, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762; Bailey v. Patterson, 1962, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512; Ex parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152.

■■ On the other hand, the three-judge procedure is designed as a safeguard against "improvident state-wide doom by a federal court of a state's legislative policy."[1] The Court's decision in this case dooms the long-standing state-wide custom, sanctioned by statute, that "white" hotels may not accept Negro guests. Doors closed to Negroes in Louisiana since Reconstruction will be opened. Although the narrow question before the Court relates only to the constitutionality of LSA–R.S. 14:317, the application of the Equal Protection Clause to such public accommodations as hotels is certain to suggest new and now only dimly discernible questions having far-reaching legal and social consequences.

In decisions requiring the adjustment of federal-state relations three heads are better than one. So, at least, is the policy underlying the statutory requirement that the United States District Court consist of three judges when plaintiffs ask the Court to go so far as to set aside the statute of a state. The members of this Court agree that the policy in favor of a three-judge court applies in this proceeding.

■ In order to eliminate uncertainty as to the legal effect of the judgment because of a three-judge court having been convened, Judge Herbert W. Christenberry, the single district judge who would otherwise have heard this case, adopts as his findings, conclusions, and decree the findings, conclusions and decree of the majority of this three-judge court. In United States v. Manning, W.D.La.1962, 206 F.Supp. 623 and United States v. Lassiter, W.D.La.1962, 203 F.Supp. 20, three-judge courts used a similar solution to the same problem.[2]

## II.

The statute attacked reads as follows:

"No person or the agent of any person owning or having in charge any apartment house, tenement house, *or other buildings in any city, which is used for dwelling purposes,* shall rent any part of any such building to a negro person or negro family when the building is already in whole or in part in occupancy by a white person or white family, or vice versa when the building is in occupancy by a negro person or negro family.

"Whoever violates this Section shall be fined not less than twenty-five dollars nor more than one hundred dollars, or imprisoned for not less than ten days nor more than sixty days, or both.

"It shall not be a defense that the buildings are provided with partitions, or separate entrances, or other features of separation between the races.

1. Phillips v. United States, 1941, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800.

2. In Turner v. City of Memphis, 1962, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762, the appellants appealed both to the Court of Appeals and to the Supreme Court. The Supreme Court held that a three-judge court was improper and that jurisdiction of the appeal was invested in the Court of Appeals. The Supreme Court treated the appeal as an application for a writ of certiorari, rather than have the litigants await decision of the Court of Appeals.

*"This Section shall not apply to white and negro employees in hotels,* lodging houses, boarding houses, or private homes, or otherwise where it can be shown to the satisfaction of the court that the housing of the two races under the same roof is a necessary part of the requirements of the employment."

■ Giving the words their ordinary meaning, a hotel is "a building * * * used for dwelling purposes". Any doubt as to the inclusion of hotels within the coverage of the law is resolved by the exclusion clause in the last paragraph. There is no reason for excluding "Negro employees in hotels", unless the law applies to hotels.

The express reference to "any apartment house" is additional evidence of legislative intent. We cannot impute to the Louisiana legislature the irrational intention to make the Act applicable to "apartment houses" but not to hotels.

The Act must be read in context. It is one part of an elaborate, developed, overall legislative plan for dealing with the racial problem in Louisiana. Louisiana laws forbid the mixing of races in every activity in almost every phase of life from birth to death. Louisiana never lacked for segregation laws before Brown v. Board of Education. Promptly after

that decision the legislature systematically mended and expanded its segregation laws.[3] The notion that the legislature intended to give hotels a special dispensation from segregation is out of character for the Louisiana legislature,[4] inconsistent with the statutory scheme for total segregation in the state, and wholly without any rational basis. As Judge Christenberry said from the bench during the oral argument:

"Do you expect this Court to hold that a legislature which has insisted on the segregation of the races in the wide open spaces of a park would have intended that there could be mixing of the races in hotels?"

This statute gives the Court no elbowroom in which to apply the doctrine of abstention, a doctrine sometimes applied when a statute requires threshold interpretation. The meaning of the law is too clear to this Court for us to believe that Louisiana courts would interpret Section 317 as exempting hotels from the anti-mixing prohibition.

### III.

■ The plain meaning of the statute is that the State requires separation of the races in hotel accommodations. Although the law is enforced by penalizing the white owners and their agents, the

3. See, for example, Act 194 of 1954. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. July 1, 1954, the Governor of Louisiana approved Act 194. This statute repealed LSA–R.S. 4:3 which provided,
"No person shall be refused admission to or entertainment at any public inn, hotel, or place of public resort, except as otherwise provided by law.
"For a violation of any of the provisions of this Section the party injured has a right of action to recover any damages, exemplary as well as actual, which he may sustain."
.and LSA–R.S. 4:4 which provided
"All licenses granted by Louisiana and by all parishes and municipalities of Louisiana to persons engaged in the business of, or keeping places of public resort shall contain the express condition that the place of business or public resort shall be open to the accommodation

and patronage of all persons without distinction or discrimination on account of race of color.
"Whoever violates the condition of the license shall forfeit his license, and his place of business or of public resort shall be closed. Moreover, he shall be liable at the suit of the person aggrieved to such damages as the latter shall sustain."
These provisions go back to the Revised Statutes of 1870.

4. For example, the Louisiana Interposition Act, among other pronouncements, declares that decisions of the federal courts based on *Brown v. Board of Education* are "null, void and of no effect". Act 2 of First Extraordinary Session of 1960. See the *Bush* cases, especially Bush v. Orleans Parish School Board, E.D.La.1960, 188 F.Supp. 916, aff'd 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806.

effect of the statute is to enable the State, by legislative mandate, to discriminate against Negroes seeking accommodations at hotels patronized by white persons. State-imposed separation of races is unconstitutional without regard to the fact that Negroes may have separate but equal facilities. A statute "authorizing discriminatory classification based exclusively on color" clearly violates the Fourteenth Amendment. Burton v. Wilmington Parking Authority, 1961, 365 U.S. 715, 727, 81 S.Ct. 856, 862, 6 L.Ed.2d 45, 53 (concurring opinion of Mr. Justice Stewart).

Section 317 goes beyond the mere separation of the races. The telling effect of the section is to permit Negroes in the travelling public *separate but only unequal* hotel accommodations.

■ Going back to the time when the memory of man runneth not to the contrary, inns have been under a duty to accept wayfarers seeking lodgings for the night. The reason for this ancient rule has lost its force as to white travellers who, turned down at one hotel or motel, have little trouble finding accommodations at another. But the innkeeper's enforced abandonment of the rule under Section 317 results in the state imposing a heavy discriminatory burden on Negroes seeking lodgings in Louisiana. We take judicial notice that in Louisiana, as a general rule, "white" hotels are far superior to "Negro" hotels, and the "white" travelling public has a relatively wide choice of hotels as to price range; "Negro" hotels are few, inferior, and offer rooms within a limited price range. What all Louisianians know, this Court knows.

The defendants' counter-arguments rest primarily on the ground that the action sought to be enjoined is not state action. This defense is responsive to the plaintiffs' contention that hotels are affected with a public interest and are agents of the state or function governmentally in lieu of the State in enforcing the law. We find it unnecessary to reach these issues.

■ A "State acts by its legislative, its executive, or its judicial authorities. It can act in no other way". Ex parte Virginia, 1880, 100 U.S. 339, 347, 25 L.Ed. 676. There is no action more state action than legislative enactment of a statute.

■ Purely private action is insulated from the Fourteenth Amendment.[5] But when private persons discriminate because state law requires them to discriminate—the legislature's thumb pressing down hard on the "white" side of the scales—even such private persons come within the ambit of the Fourteenth Amendment. In addition, in the case before us, are public officials bound by their oath to enforce the criminal sanctions imposed by the statute. It is proper therefore to enjoin both the hotels owners (and their agents) and the public officials from giving effect to the statute we hold to be unconstitutional.

Buchanan v. Warley, 1917, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149, involved an analogous situation in which the legislation related to blocks rather than buildings. A Louisville ordinance denied Negroes the right to occupy houses in city blocks occupied by a majority of white persons. The Supreme Court held that the ordinance violated both the equal protection and due process clauses of the Fourteenth Amendment. As long ago as 1927, in Harmon v. Tyler, 1927, 273 U.S. 668, 47 S.Ct. 471, 71 L.Ed. 831, a unanimous court, on the authority of Buchanan v. Warley, declared invalid a Louisiana law forbidding any Negro to

5. Since the decision in Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, the principle has been established that the Fourteenth Amendment inhibits only such action as may fairly be said to be that of the States. See also United States of America v. Cruikshank, 1876, 92 U.S. 542, 23 L.Ed. 588; United States of America v. Harris, 1883, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290; Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161.

establish a home on any property in a white community, "except on the written consent of a majority of the persons of the opposite race inhabiting such community or the City to be affected." In reliance on these two cases, Judge Borah, for the Court, in Birmingham v. Monk, 5 Cir., 1950, 185 F.2d 859, ruled that a city ordinance segregating residential areas was unconstitutional, and that evidence showing the ordinance was passed to prevent breaches of the peace was irrelevant.

*Buchanan v. Warley* and *Harmon v. Tyler* involved the rights of the white owners and vendors to sell their property. Such vendors might be analogized to the hotels, and this case distinguished on the ground that the hotels are not complainants. But this position is not supportable, in view of City of Richmond v. Deans, 1930, 281 U.S. 704, 50 S.Ct. 407, 74 L.Ed. 1128. That case concerned an ordinance similar to the Louisville ordinance in *Buchanan v. Warley.* The plaintiff, a Negro, sued to enjoin enforcement of the ordinance as violative of the Fourteenth Amendment. The district court granted the relief. The Supreme Court affirmed, simply citing *Buchanan v. Warley* and *Harmon v. Tyler.*

Similarly the Fifth Circuit has held that state-imposed segregation on intrastate buses in Montgomery denies due process and equal protection. Browder v. Gayle, M.D.Ala.1956, 142 F.Supp. 707, aff'd per curiam, 1956, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114. See also Flemming v. South Carolina Elect. & Gas Co., 4 Cir., 1955, 224 F.2d 752, app. dism. 1956, 351 U.S. 901, 76 S.Ct. 692, 100 L.Ed. 1439. As the Court said in Baldwin v. Morgan, 5 Cir., 1961, 287 F.2d 750, in holding that a railroad terminal could not segregate its station or post signs reading "Colored Intrastate Passengers Waiting Room":

"But the vice here is not the impermissible distinction between *inter* and *intra*state commerce or even the absence of an explicit purpose coercively to compel segregated oc-

cupancy (as distinguished from the maintenance of separate rooms). What is forbidden is the state action in which color (i. e., race) is the determinant. It is simply beyond the constitutional competence of the state to command that any facility either shall be labeled as or reserved for the exclusive or preferred use of one rather than the other of the races. Certainly the state may not directly or through a municipality prescribe that a certain area of the city is to be inhabited by Negroes, another by whites, or that such areas are to be so marked even though no sanctions are imposed as to occupancy." 287 F.2d at p. 754.

In such cases as *Browder v. Gayle* and *Flemming v. South Carolina Elect. & Gas Co.,* the business enterprise was privately owned and operated and wholly intrastate, free therefore from federal regulation of interstate commerce, but the separation of the races in local buses under constraint of state law constituted state action.

In Dorsey v. State Athletic Commission, D.C.1958, 168 F.Supp. 149, aff'd, 1959, 359 U.S. 533, 79 S.Ct. 1137, 3 L.Ed.2d 1028, a rule of the Louisiana Athletic Commission under a state law prohibited mixed athletic contests. From the standpoint either of a manager or prize fighter, the prize fighting business is a purely private enterprise. And, the tensions that might arise from interracial prize fighting argue strongly for the exercise of state police power to bar mixed prize fights. This Court held, however, that the effect of depriving Negro prize fighters of the right to box white prize fighters was discriminatory under the Fourteenth Amendment. We said:

"Act 579 does not raise difficult issues involving the meaning of a law or the unconstitutional application of a statute apparently constitutional. Act 579 is not intended to circumvent desegregation by clever verbiage or by adroit administrative techniques. Act 579 is in the

teeth of the School Segregation Cases, * * * and other cases stemming from that decision; a clear challenge to the validity of those cases when a state legislature invokes the police power. In these circumstances this Court must hold with the plaintiff that, as to athletic contests, Act 579 of 1956 is unconstitutional on its face in that separation of Negroes and whites based solely on their being Negroes and whites is a violation of the Equal Protection Clauses of the Fourteenth Amendment of the Constitution of the United States. * * * "

In 1942 the Mayor of Opelousas wrote the Attorney General of Louisiana requesting advice as to the legal steps necessary "to effect a separation of the white and colored races in (the) theatres" in Opelousas. The Attorney General, ineluctably, and more succinctly than the Court in this opinion, answered:

"(T)here is no way we know of that an ordinance could be drawn forbidding the races to occupy the same theatre at the same time which would not violate the United States Constitution." [6]

What the law was in 1942 to the Attorney General of Louisiana, ruling on the constitutionality of forced separation of races in theatres by city ordinance is the law today as this Court rules on the constitutionality of forced separation of races in hotels by state statute.

The concurring opinion performs a useful service. It sharpens the issues. It clarifies the Court's holding. Taking a narrow view of the Constitutional issue, the majority hold that the statute violates the Equal Protection Clause in that it discriminates against Negroes; violates the Due Process Clause in that state-imposed separation of facilities based exclusively on race is an invidious classification. Taking a broad view, the concurring opinion holds that the statute is unconstitutional because it is an unreasonable interference by the state in a private business. As is not uncommon in a concurring or dissenting opinion, our brother does not spell out his reasoning at length nor cite any authority. Apparently, he views the law as a taking of property without due process. The concurring opinion finds another constitutional problem the majority did not consider in the rights and obligations of hotels under the Fourteenth Amendment—in the absence of a state law forbidding "mixing". The pleadings do not raise these issues. The attorneys did not argue them. As suggested in Section I of this opinion, many constitutional questions, now undefined, will arise in the future, once the doors of "white" hotels are opened to Negroes. In deciding this case, as it is framed by the pleadings and the admitted facts, the majority find it unnecessary to discuss these issues.

According to the minority opinion, since the hotel business is privately owned and operated, it is protected by the Due Process Clause of the Fourteenth Amendment, but is not bound by the Equal Protection Clause. Again, the majority do not discuss this point. The majority consider it necessary to hold only that the acts of the hotels in giving effect to the statute bring the hotels within the ambit of the Fourteenth Amendment. The plaintiffs therefore have standing to seek an injunction against such acts. Every person, public or private, who acts under the compulsion of a law violative of the Equal Protection and Due Process Clauses is within the reach of the Fourteenth Amendment. For all persons that Amendment is both a sword and a shield.

6. The full answer included this language: "Act 118 of 1916 requires not less than two entrances and not less than two ticket offices with individual ticket sellers. A segregation of the races within the building is permissible;" At the time, this was within the separate-but-equal doctrine of Plessy v. Ferguson. Opinions of the Attorney General of Louisiana, 1942–44, p. 718.

The motion of the plaintiffs for a preliminary injunction is

Granted.

WEST, District Judge (concurring).

I concur with the majority opinion in this case only to the extent that it holds the statute in question to be unconstitutional. I strongly disagree, however, with the reasons given or suggested in the majority opinion for so holding, and I emphatically disagree with the suggestions contained in the majority opinion as to the effect of this ruling.

The only issue presented in this case is whether or not a state, by legislative enactment, may force a hotel owner or operator to refuse accommodations to a Negro when the hotel is already in whole or in part in occupancy by white people. The issue thus presented is not whether or not a Negro has a right to be granted occupancy in a so-called white hotel, but only whether or not the owner and operator of a privately owned and operated hotel can be forced by legislative fiat to segregate his hotel.

Just as I believe that the federal government may not legally force the owner or operator of a private business to integrate, so do I believe that the state or local government may not compel the owner or operator of a private business to segregate. Such continued and extended interference by state and federal government into the operations of purely private business will surely spell doom to our long cherished system of free enterprise. In our zeal to protect the fundamental rights of minority groups, let us not forget that a hotel owner, just as the owner of any other private business enterprise, also has certain constitutionally guaranteed rights. One of these rights is the right to own and operate his business without undue interference by either the state or national government. Where, such as in the case of hotels, the business is not a state or federally franchised, monopolistic enterprise, the right of freedom to choose those with whom the owner or operator wishes to do business is just as fundamental as any of the so-called civil rights of which we lately hear so much.

The issues presented in this case call for no dissertation on the relative prices of hotel rooms, nor on the suitability of hotel accommodations available to members of the various races. It merely requires a determination of whether or not a state statute, which requires, under penalty of law, an owner or operator of a privately-owned hotel to refrain from renting rooms to members of the white and Negro race simultaneously is unconstitutional. It does not involve the right of the Negro to obtain accommodations at any particular hotel. It only involves his right not to be denied such accommodations solely on the ground that the state laws prohibit the hotel owner from making such accommodations available to him. It is only state-imposed separation of the races that is unconstitutional. As stated in the majority opinion, purely private action is insulated from the operation of the Fourteenth Amendment.

I have some doubt as to whether these plaintiffs are even proper parties in this suit. In my opinion, the only right involved is the right of the hotel owner to conduct his business without undue governmental interference, rather than the right of the Negro to be admitted to the hotels in question. However, inasmuch as the plaintiffs here claim that they were wrongfully denied accommodations solely on account of the statute in question, leaving at least an inference that had there been no such state statute, the hotel operators would have granted them the accommodations requested, I do, with some hesitation, agree that the question as to the constitutionality of the statute involved is properly before the Court. I further unhesitatingly agree that the statute involved does include hotels within its provisions.

I do not agree that this decision necessarily "dooms a long-standing state-wide custom", nor do I agree that this decision necessarily "opens doors closed to Negroes in Louisiana since Reconstruction". Whether or not such results flow from

this decision will depend entirely upon the will of the owners and operators of private hotels and other private business enterprises. By this decision the owners or operators of hotels or other establishments covered by the statute are merely no longer *required* by state law to segregate. They may "open the doors" or close them, as they see fit and as they deem expedient in the day to day operation of their business.

There is nothing in the issues presented to this Court, in this case, which require a holding or even an intimation such as is contained in the majority opinion that hotels are of such a public nature as to bring them within the ambit of the Fourteenth Amendment. The hotels involved in this litigation are privately owned and operated and are thus, in my opinion, clearly not within the ambit of the Fourteenth Amendment.

The majority opinion states that "[p]urely private action is insulated from the Fourteenth Amendment". With this I thoroughly agree. But it then goes on to say that when private persons discriminate because of state law, "even such private persons come within the ambit of the Fourteenth Amendment". With this I emphatically disagree. In such an event, it is the state law which requires the discrimination complained of that is brought within the ambit of the Fourteenth Amendment and not the private person involved. It is the discriminatory law itself which must then be held unconstitutional, and not the acts of the private person. After the discriminatory law complained of is held unconstitutional, and therefore no longer effective, the same private persons may continue, with complete immunity, to voluntarily discriminate to their hearts' content in the conduct of their private affairs.

The many cases cited in the majority opinion are apropros only insofar as they stand for the proposition that *state imposed* separation of the races is unconstitutional. None of these cited cases in any way support the conclusion that a Negro's rights have been violated when the owner or operator of a private hotel refuses him accommodations if the refusal is the voluntary, private act of the hotel operator. It is only when such refusal is made under compulsion of state law that the person refused may complain of illegal discrimination. For instance, when the law forbidding a person living in a white subdivision to sell his property to a Negro was held unconstitutional, there was certainly no ruling contained therein *requiring* the property owner to sell to a Negro. When the law forbidding boxing matches between white boxers and colored boxers was held unconstitutional, there was no ruling contained therein *requiring* a white boxer to fight a colored boxer. By the same token, to hold that this statute forbidding the operator of a so-called white hotel to rent a room to a Negro is unconstitutional should in no way be construed to mean that such a hotel operator is *required* to rent a room to a Negro.

From the many gratuitous comments contained in the majority opinion, which, in my opinion are unnecessary to a decision of the issues presented, I fear the conclusion may be drawn that this decision stands for the proposition that it is a violation of a person's constitutional rights to be denied accommodations in a hotel purely on the basis of race or color, even though such denial is made under no compulsion of law but as a purely private act. If such a conclusion is intended, I must respectfully record my nonconcurrence. I agree that the statute is unconstitutional for the reasons which I have heretofore stated. As far as I am concerned, this decision merely gives greater latitude to a hotel operator and other persons covered under the statute in question in the management of their business. It does not substitute a mandate requiring him to *integrate* his hotel for a prior mandate requiring him to *segregate* it. It eliminates both mandates. It permits him to operate his own private business without unwarranted governmental interference.

The right of a person to operate his privately owned business as he sees fit is

just as sacred a right as any other civil right. I am not willing to assist in driving the final nail in the coffin of free enterprise. To hold the statute here involved unconstitutional on any other grounds than those suggested in this concurring opinion will do just that.