Evangeline **BARTHE**, a minor, by Edwin
Barthe, her father and next friend,
et al., Plaintiffs,

v.

**CITY OF NEW ORLEANS, LOUISIANA,**
a Municipal Corporation of the State
of Louisiana, et al., Defendants.

Civ. A. No. 12968.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 31, 1963.

Ernest N. Morial, A. P. Tureaud, New Orleans, La., for plaintiffs.

Alvin J. Liska, Ernest L. Salatich, New Orleans, La., for defendants.

Before WISDOM, Circuit Judge, and CHRISTENBERRY and AINSWORTH, District Judges.

PER CURIAM.

The plaintiffs in this action are adult Negro residents of New Orleans. For themselves and their children, and for other Negroes in New Orleans and their children, they petition for the desegregation of city-owned or operated parks and other recreational facilities.

The City of New Orleans has an extensive recreational and cultural program for its citizens, children and adults. It is a model program under the direction of the New Orleans Recreation Department (NORD), which has an operating budget of $685,000 for this year. In great part, NORD's success is attributable to the imagination, energy, and efficiency of Mr. Lester J. Lautenschlaeger, who has been the unpaid Director of the Department since it was established twelve or fifteen years ago.

The evidence is undisputed that the playgrounds, community centers, other public facilities, and NORD's program are segregated.[1] This policy is practiced under the Louisiana Anti-Mixing Stat-

1. In New Orleans City Park Improvement Ass'n v. Detiege, 5 Cir., 1958, 252 F.2d 122, 358 U.S. 54, 79 S.Ct. 99, 3 L. Ed.2d 46 (1958), 358 U.S. 913, 79 S.Ct. 228, 3 L.Ed.2d 234 (1958), the New Orleans City Park Improvement Association was permanently enjoined from denying plaintiffs and other Negroes in that matter, solely on account of their race or color, the use of the facilities of the New Orleans City Park.

'ute, LSA–R.S. 33:4558, as well as by long-standing custom. The evidence is also undisputed that the playgrounds and recreational facilities for Negroes are by no means equal to those available to white persons. There are only 19 Negro playgrounds as against 100 white playgrounds.

 "It is no longer open to question that a State may not constitutionally require segregation of public facilities." Johnson v. Virginia, 1963, 373 U.S. 61, 83 S.Ct. 1053, 10 L.Ed.2d 195. To the extent that the City relied on the Louisiana Statute, LSA–R.S. 33:4558, the City relied on law unconstitutional on its face.

Nor can a City by ordinance, policy or custom maintain segregated facilities. On facts similar to those in this case, the Supreme Court recently held that the City of Memphis must immediately desegregate its public playgrounds and municipal recreational facilities. Watson v. City of Memphis, 1963, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529.

So that there will be no misunderstanding, we hold that the City of New Orleans must forthwith desegregate its parks, playgrounds, community centers, and all its recreational and cultural facilities and activities, including all programs directed or supervised by the New Orleans Recreation Department. We recognize that some private groups and organizations also use public facilities. They may continue to do so as private groups or individuals, provided that the alleged privacy and claim to freedom of association are not in fact cloaks for state or city action to continue segregation of public facilities and activities. The first and primary consideration of such matters lies within the sound judgment of the single district judge to whom the case was originally assigned.

Here, as in McCain v. Davis, 1963, 217 F.Supp. 661, it might be said there is so little substance to the constitutional questions the City raises that a three-judge court should not decide the case. In the interest of expediting justice, however, we adopt the procedure used in McCain v. Davis, 1963, 217 F.Supp. 661; United States v. Manning, 1962, W.D.La., 206 F.Supp. 623; and United States v. Lassiter, 1962, W.D.La., 203 F.Supp. 20.

Under the circumstances, therefore, the motion for a preliminary injunction in behalf of plaintiffs and against defendants will be issued on plaintiffs posting bond in the sum of $500.