Malcolm S. LAGARDE, Willie Major, Wesley Nicholas, Allen White, Roosevelt Spencer, and Alvin Scott, Individually and in behalf of Others Similarly Situated, Plaintiffs,

v.

RECREATION AND PARK COMMISSION FOR the PARISH OF EAST BATON ROUGE, a public corporation, and Ralph M. Hileman, Superintendent of Recreation and Parks for the Parish of East Baton Rouge, Defendants.

Civ. A. No. 1287.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

May 18, 1964.

Johnnie A. Jones, Baton Rouge, La., for plaintiffs.

Sargent Pitcher, Jr., Dist. Atty., 19th Judicial Dist. Parish of East Baton Rouge, State of Louisiana, for defendants.

WEST, District Judge.

This is a class action filed by a group of Negro citizens, all of whom are residents of and domiciled in the Parish of East Baton Rouge, State of Louisiana. This

suit was filed on November 17, 1953, at which time the plaintiffs alleged that they, and other Negroes similarly situated, were being systematically denied the use and enjoyment of the municipally owned and operated recreational facilities in the City of Baton Rouge and the Parish of East Baton Rouge, such as the golf courses, tennis courts, swimming pools, dance pavilions, skating rinks, picnic grounds, etc. They alleged that such denial of the use of these facilities was discriminatory, and constituted a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Petitioners, in their suit, seek a declaratory judgment by this Court declaring the rights and legal relations of the parties hereto, and they further seek an injunction enjoining and restraining the respondents from denying them, and other Negroes similarly situated, the use of the municipally owned and/or operated recreational facilities in the City of Baton Rouge and the Parish of East Baton Rouge, Louisiana.

Respondents filed an answer on February 1, 1954, in which they admitted that the "Recreation and Park Commission has maintained in the establishment of recreational facilities in said areas the tradition and custom of segregation * * *," and that "Defendants have attempted throughout the years to equalize recreational facilities in proportion to needs * * *," and that they "presently operate 19 different recreational facilities, more or less, 10 of which are for white persons and 8 of which are for members of the negro race." The answer, filed in 1954, further alleged that plans were underway to develop recreational facilities, including a golf course, for the exclusive use of members of the Negro race. (Since that time, new facilities, including a golf course, have been developed and opened, on a segregated basis, for members of the Negro race.) The answer further intimated that if the respondents were forced to desegregate these recreational facilities, that it would necessitate the closing of all public recreational facilities in the City

and Parish. On March 25, 1955, this case was brought on for hearing before this Court, as then constituted, on a motion by petitioners for a judgment on the face of the pleadings. A pre-trial conference was ordered, and the Court, on October 5, 1955, continued the pre-trial conference pending a decision by the United States Supreme Court in the case of Dawson v. Mayor and City Council of Baltimore, 220 F.2d 386 (CA 4 1955), which was then pending before it on review from the Fourth Circuit Court of Appeals. The Fourth Circuit Court of Appeals had held that for the State or City to require segregation on the basis of race in the use of certain recreational facilities (bathing beaches and bath houses) in the State of Maryland was violative of the Fourteenth Amendment to the United States Constitution. This case was, upon review, affirmed by the Supreme Court of the United States, 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774, on November 7, 1955.

No further action was had in this case until September 28, 1962, when a motion was filed by petitioners requesting a judgment in accordance with the original prayer, and on the face of the original pleadings. No date for hearing was set at that time, and it was not until January 17, 1964, that this matter came on for hearing on plaintiffs' motion. The granting of the motion was opposed by the respondents, whereupon, because of the long lapse of time between the initial filing of this suit and the date of the hearing, the Court ordered petitioners to file, within a specified time, depositions or other evidence in support of their claim, and granted respondents time to file, if they could, countervailing evidence. In other words, the Court elected to treat petitioners' motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Thereafter, the deposition of each of the petitioners was taken, together with the deposition of Eugene Allen Young, the Superintendent of the Recreation and Park Commission for East Baton Rouge Parish, and the deposition of R. Gordon

Clanton, the head lifeguard and pool manager of the City Park Swimming Pool as of July 23, 1963. (On that date certain Negroes were allegedly denied the use of the swimming pool solely because of their race.) All of these depositions show, beyond any question of doubt, that petitioners, and possibly others of their class, have attempted to make use of the recreational facilities in question, and have been denied the use thereof solely because of their race. These depositions, together with the admissions in the original answer, are unrefuted to the effect that the facilities in question are, indeed, operated on a segregated basis. No countervailing affidavits or evidence of any kind was filed by respondents.

Any defense that might previously have been available to respondents was pretty much eliminated by the decision of the United States Supreme Court in the case of Watson et al v. City of Memphis, Tennessee, et al, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963). In that case, the issue, simply stated, was whether the City of Memphis could further delay in meeting fully what the Supreme Court of the United States considered to be its constitutional obligation under the Fourteenth Amendment to desegregate its public parks and other municipal recreational facilities. That suit was commenced in May, 1960, and at the time of filing the suit, the City of Memphis did not deny that the majority of the relevant facilities were operated on a segregated basis, nor did it deny its duty under the Fourteenth Amendment, as interpreted by the United States Supreme Court, to terminate its policy of conditioning use of such facilities on race. The City of Memphis, however, cited the fact that it had effected a certain measure of desegregation in some of its recreational facilities, and pleaded for more time, urging the need and wisdom of proceeding slowly and gradually in its desegregation efforts. The United States District Court in Memphis granted the City six months within which to file a plan of desegregation of all of its recreational facilities. The Sixth Circuit Court of Appeals affirmed that decision. But upon review, the United States Supreme Court reversed both the District Court and the Court of Appeals, holding that the delays provided for in Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), for the gradual desegregation of public school systems were not applicable to the desegregation of public recreational facilities. The Court concluded that the same administrative problems not being involved, the granting of time, as in school cases, would not be justified. In concluding its opinion, the Supreme Court said:

"Since the city has completely failed to demonstrate any compelling or convincing reason requiring further delay in implementing the constitutional proscription of segregation of publicly owned or operated recreational facilities there is no cause whatsoever to depart from the generally operative and here clearly controlling principle that constitutional rights are to be promptly vindicated. The continued denial to petitioners of the use of city facilities solely because of their race is without warrant. Under the facts in this case, the District Court's undoubted discretion in the fashioning and timing of equitable relief was not called into play rather, affirmative judicial action was required to vindicate plain and present constitutional rights. Today, no less than 50 years ago, the solution to the problems growing out of race relations 'cannot be promoted by depriving citizens of their constitutional rights and privileges,' Buchanan v. Warley, supra, 245 U.S. [60] at 80–81, 38 S.Ct. [16] at 20, 62 L.Ed. 149."

In July of 1963, in the case of Barthe, et al v. City of New Orleans, et al, 219 F.Supp. 788 (E.D.La.1963), the City of New Orleans was faced with the same problem. Suit was brought to desegregate all of the public recreational facilities operated by the New Orleans Recreation Department. After considering the

facts in that case, which were essentially the same as those presented in the present case, the Court said:

" 'It is no longer open to question that a State may not constitutionally require segregation of public facilities.' Johnson v. Virginia, 1963, 373 U.S. 61, 83 S.Ct. 1053, 10 L.Ed.2d 195. * * * Nor can a City by ordinance, policy or custom maintain segregated facilities."

The Court went on to say:

" * * * New Orleans must forthwith desegregate its parks, playgrounds, community centers, and all its recreational * * * facilities * * *. We recognize that some private groups and organizations also use public facilities. They may continue to do so as private groups or individuals, provided that the alleged privacy and claim to freedom of association are not in fact cloaks for state or city action to continue segregation of public facilities * * *."

This case was affirmed by the United States Supreme Court on February 17, 1964. 376 U.S. 189, 84 S.Ct. 636, 11 L. Ed.2d 602.

Thus, while the Court was forced, pursuant to the authority of many recent decisions of the United States Supreme Court, to hold that municipally owned or operated recreational facilities could no longer be operated by the municipality on a segregated basis, it did, nevertheless, once again recognize the fact that there is no legal impediment to voluntary, individual segregation. It is only forced segregation brought about or required by state action that is prohibited by law.

■ Thus, unless and until the principles of law enunciated in Brown v. Board of Education, supra, and Watson v. City of Memphis, Tennessee, supra, and the many other cases to the same effect, are either reversed by the United States Supreme Court, or are otherwise nullified by proper legislative process, this Court is bound by those decisions. Under the present state of the law, it is too well settled to admit of further argument that to exclude persons from the use of publicly owned and operated recreational facilities solely because of their race or color is to deny the equal protection of law guaranteed to all citizens by the Fourteenth Amendment to the United States Constitution. Watson v. City of Memphis, Tennessee, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963) (municipal parks and "other city owned or operated recreational facilities"); Turner v. City of Memphis, Tennessee, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962) (airport restaurant); New Orleans City Park Improvement Ass'n. v. Detiege, 252 F.2d 122 (CA 5 1958), aff. 358 U.S. 54, 79 S.Ct. 99, 3 L.Ed.2d 46 (1958) (golf courses); City of St. Petersburg v. Alsup, 238 F.2d 830 (CA 5 1956) (beach and swimming pools); Dawson v. Mayor and City Council of Baltimore, 220 F.2d 386 (CA 4 1955), aff. 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774 (1956) (beaches and bathhouses); Baythe v. City of New Orleans, 219 F. Supp. 788 (E.D.La.1963), aff. 376 U.S. 189, 84 S.Ct. 636, 11 L.Ed.2d 602 (1964) (parks, playgrounds, community centers; cultural facilities); Willie v. Harris County, 202 F.Supp. 549 (SD Tex.1962) (park); Moorhead v. City of Fort Lauderdale, 152 F.Supp. 131 (SD Fla.1957), aff. 248 F.2d 544 (CA 5 1957) (golf course); Ward v. City of Miami, 151 F.Supp. 593 (SD Fla.1957) (golf course); Holley v. City of Portsmouth, 150 F.Supp. 6 (ED Va.1957) (golf course); Fayson v. Beard, 134 F.Supp. 379 (ED Tex.1955) (parks); Tate v. Department of Conservation and Development, 133 F.Supp. 53 (ED Va.1955), aff. 231 F.2d 615 (CA 4 1956), cert. denied 352 U.S. 838, 77 S.Ct. 58, 1 L.Ed. 2d 56 (1956), (parks); Brown v. South Carolina State Forestry Commission, 8 R.R.L.R. 1109, 226 F.Supp. 646 (ED S.C.1963) (state parks).

■ Respondents have been given every opportunity to be heard on this matter, and all parties hereto have been given more than ample time to present their claims and defenses. The evidence

leaves no room for doubt as to the fact that the recreational facilities owned and operated by the Parish of East Baton Rouge and/or the City of Baton Rouge have been and are now being operated on a racially segregated basis. The City and/or Parish has been unable to demonstrate any compelling reason requiring further delay in complying with the law as interpreted and enunciated by the Supreme Court of the United States, and in view of the Supreme Court's holding in the Watson case, this Court may not exercise its discretion as to when segregation of these facilities must be effected. That the City and Parish may lose revenues as a result thereof is apparently immaterial. City of St. Petersburg v. Alsup, 238 F.2d 830 (CA 5 1956); Department of Conservation & Development v. Tate, 231 F.2d 615 (CA 4 1956).

The Supreme Court has also held that it is no defense under the present state of the law to show that desegregation of these facilities might result in interracial disturbances, violence, riots, and community confusion and turmoil. Wright v. Georgia, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963); Watson v. City of Memphis, Tennessee, supra; Cooper v. Aaron, 358 U.S. 1, 16, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5 (1958); Brown v. Board of Education, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955); Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917).

It is no longer a valid defense to show that an order to desegregate these facilities might result in the closure of all public recreational facilities in the City and Parish, thus depriving all persons, of all races, of the excellent facilities which are now available in Baton Rouge to both races, on a traditional, well-managed, segregated basis. There is no legal obligation or duty on the part of the City or Parish to provide or operate any public recreational facilities, but if they do, they cannot provide and maintain them on a racially segregated basis. Watson v. City of Memphis, Tennessee, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963); City of St. Peters-

burg v. Alsup, 238 F.2d 830 (CA 5 1956); Willie v. Harris County, 202 F.Supp. 549 (SD Tex.1962).

This Court is bound by the many decisions herein cited, and in view thereof, petitioners' motion for summary judgment must be granted. And appropriate order consistent with the views herein expressed will be entered accordingly.