J. Arthur BROWN et al., Plaintiffs,

v.

SOUTH CAROLINA STATE FORESTRY COMMISSION, Fulton B. Creech, Chairman, C. H. Niederhof, A. B. Taylor, Sr., John C. Pracht, Robert C. Edwards, Members of the South Carolina State Forestry Commission; Charles H. Flory, State Forester, and C. West Jacocks, State Park Director, and Davis Lee by Intervention, Defendants.

Civ. A. No. AC–774.

United States District Court
E. D. South Carolina,
Columbia Division.

July 10, 1963.

Matthew J. Perry, Lincoln C. Jenkins, Jr., Columbia, S. C., Jack Greenberg, Michael Meltsner, New York City, for plaintiff.

Daniel R. McLeod, Atty. Gen. of South Carolina, Harry M. Lightsey, Jr., Asst. Atty. Gen., and David W. Robinson, Columbia, S. C., for defendants.

MARTIN, District Judge.

This suit was originally filed on July 8, 1961, by the plaintiffs for their own benefit and on the behalf of all other persons similarly situated. In the Complaint the plaintiffs allege that they are denied the use of public park facilities in the State of South Carolina solely because they are Negroes in violation of their constitutional rights. The plaintiffs ask that certain statutes of the State of South Carolina, which allegedly require racial discrimination in the public park system in South Carolina, be declared unconstitutional and that the defendants be enjoined from prohibiting them and other Negroes similarly situated from making use of the public parks and beaches owned and operated by the State of South Carolina.

By Order of The Honorable George Bell Timmerman, dated September 17, 1961, the plaintiffs filed an Amended Complaint on October 17, 1961, which, in effect, asked for the same relief as the original complaint.

On November 30, 1961, plaintiffs filed a Motion for Preliminary Injunction in which they asked that the Court grant a preliminary injunction against the defendants restraining them from enforcing certain statutes of South Carolina and from discriminating against Negroes in regard to the use of the public parks and beaches owned and operated by the State of South Carolina until this suit could be heard on its merits.

On December 17, 1963, the defendants filed an Answer in which they admit that the State of South Carolina operates some parks for white citizens and some parks for Negro citizens in accordance with State law but deny that such operation of the park facilities deprives the plaintiffs of their constitutional rights. Defendants further allege that this action is brought in reality by nonresident corporations.

Along with the Answer, defendants moved that the issues in the cause be tried by the Court with an Advisory Jury.

On January 2, 1963, plaintiffs filed a motion to strike paragraphs (11), (12), (13), (15) and so much of paragraph (16) as alleges "This action is in reality an effort by nonresident corporations to enforce alleged rights to equal protection possessed by individuals."

On January 11, 1963, defendants propounded fifteen interrogatories to the plaintiffs in which they seek information pertaining to the National Association for the Advancement of Colored People; the NAACP Legal and Educational Defense Fund, the relationship between the NAACP and its Legal and Educational Defense Fund, the offices held in the NAACP by the plaintiffs Newman, Shaprer, Brown and Nelson; the payment of legal fees to the attorneys representing the plaintiffs in this action (and other suits pending in the Federal Courts) and the status of the attorneys in relation to the NAACP or its Legal and Educational Defense Fund. The plaintiffs promptly filed objections to all interrogatories propounded upon the ground that they are irrelevant, immaterial, impertinent and not directed to any issue in controversy in this action.

On March 23, 1963, the plaintiffs filed a Motion for Summary Judgment under the provisions of Rule 56 of the Federal Rules of Civil Procedure.

On July 11, 1961, Davis Lee, moved the Court for an Order permitting him to intervene in the action as a defendant, and file an Answer to the complaint in the suit, upon the ground that he was similarly situated like the approximately 900,000 Negro citizens of the State of South Carolina and, as such, has a defense to the plaintiffs' claim presenting both questions of law and of fact which are common to the main action. By Order of The Honorable George Bell Timmerman, dated December 13, 1961, the motion was granted and the Answer of the defendant Davis Lee was filed effective October 12, 1961.

On February 5, 1962, the defendant Davis Lee filed a motion to bring in the action an additional party, the South Carolina Branches of the National Association for the Advancement of Colored People. At the same time the said defendant filed a motion for leave to file a "supplemental Answer and counterclaim." The proposed counterclaim was filed as an attachment to the latter motion. In the proposed counterclaim, defendant asks damages against the plaintiffs and the South Carolina branches of the NAACP in the sum of $10,000,000, treble damages, as provided by the Clayton Amendment to the Sherman Anti-Trust Act on the theory that the plaintiffs in concert with the South Carolina Branch of the NAACP has disrupted his newspaper business and has injured the business of other citizens by organized boycotts of trade and other alleged unlawful activity. On April 18, 1963, the defendant, Davis Lee, filed a proposed amendment to the original proposed counterclaim in which he alleges that the NAACP also conspired in the activities referred to above and asks for the sum of $500,000 treble damages, as provided by the Clayton Amendment to the Sherman Anti-Trust Act. At the same time

the defendant, Davis Lee, moved the Court for an Order joining the National Organization and the South Carolina Branches of the NAACP as parties to the action.

On April 18, 1963, this Court held a hearing on all the pending motions in Columbia, South Carolina, at which time all arguments were heard and testimony was introduced in connection with the Motion for Summary Judgment. The Court took all motions under advisement and gave counsel for the parties permission to file briefs in support of their respective positions.

The State of South Carolina operates a total of twenty-six State Parks, nineteen of which are designated for the use of white citizens and seven of which are designated for the use of Negro citizens. The State Park system is operated pursuant to State Statutes which are as follows.[1]

"§ 51–1. The State Commission of Forestry may control, supervise, maintain and wherever practicable, improve all parks belonging to the State for general recreational and educational purposes.

"§ 51–2.1. The [State] Commission [of Forestry] may operate and supervise only racially separate parks. The authority to operate and supervise racially integrated parks is denied to the Commission, the State Forester, the State Director and the superintendent of State Parks.

"§ 51–2.2. No person shall have access to the facilities of the State parks without the express permission of the State.

"§ 51–2.3. The [State] Commission [of Forestry]. may admit to the facilities of the State parks only persons having the express permission of the State to use such facilities. The authority to admit to the facilities of the State parks persons who do not have the express permission of the State to use the same is denied to the Commission, the State Forester, the State Director and the Superintendent of State Parks.

"51–2.4. Permission is hereby granted to the citizens of the State to use the facilities at the parks for their own race under such rules and regulations not inconsistent with the provisions of §§ 51–2.1 to 51–2.2.3 as the [State] Commission [of Forestry] may establish."

The State Parks are geographically located throughout the State so that a park is reasonably accessible to all the people regardless of where they reside. Because of the greater number of white parks than Negro parks, the white parks are much more accessible to the white population than the Negro parks are to the Negro population. The parks are located in areas outside of urban communities. None of them have the benefit of city police protection. Generally speaking, the recreational activities in these parks consists of swimming, camping, picnicking and in some cases the rental of cabins. The parks employ no law enforcement officers as such and must rely upon the local law enforcement authorities for the preservation of law and order.

During the year 1962, some three million people made use of the State Parks' facilities in South Carolina.

On August 30, 1960, three of the plaintiffs, J. Arthur Brown, H. P. Sharper and J. Herbert Nelson, presented themselves at Myrtle Beach State Park, one of the beaches maintained by the State of South Carolina. When the plaintiffs arrived at the park entrance, they were advised that the park was closed and were denied admission. At the time the park was occupied by white persons and there is no evidence that such persons were required to leave the park.

On June 15, 1961, J. Arthur Brown, Edith Davis, Mary Nesbitt, Hill Norris, Jr., Murry Canty, Sam Leverett and Gladys Porter attempted to enter Ses-

1. References are to the South Carolina Code (1962).

qui Centennial Park, located near Columbia, South Carolina. Upon their arrival at the park entrance, Chief J. P. Strom, of the South Carolina Law Enforcement Division informed the plaintiffs that the park had been closed and that they could not enter.

All of the plaintiffs are members of the NAACP and some of them hold offices in that organization. All the plaintiffs were residents and citizens of the State of South Carolina at the time they attempted to enter the parks and at the time this suit was instituted but subsequently H. P. Sharper and Edith Davis have moved from the State of South Carolina.[2]

There can be no doubt that the plaintiffs were denied admission to the State Parks because they were Negroes; in fact, under the statutory law of South Carolina, they were and are prohibited from using the nineteen parks designated for white persons.

The recent case of Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (No. 424) decided May 27, 1963, by the United States Supreme Court dictates to this Court the decision which must be reached in the present case. In the Watson case, the plaintiffs brought a class action against the City of Memphis, Tennessee, in which they alleged that the City had denied certain of the plaintiffs access to various recreational facilities owned and operated by the City. The City admitted that it operated a majority of the facilities on a segregated basis and admitted that it must terminate this practice but contended that complete desegration of the recreational facilities should be done gradually. At the trial in the District Court, the defendant offered testimony of several law enforcement officers who stated that, in their opinion, if the facilities were integrated, racial strife would develop to such an extent that it would be

necessary to close many of the parks thus depriving many citizens of these facilities. The District Court denied the relief sought by the plaintiffs and ordered the city to submit within six months a plan[3] for the gradual integration of all facilities. On appeal to the Court of Appeals for the Sixth Circuit, the Order of the District Court was affirmed. 303 F.2d 863. The United States Supreme Court Reversed. Mr. Justice Goldberg in his opinion for the court said:

"* * * Solely because of their race, the petitioners here have been refused the use of city owned or operated parks and other recreational facilities which the Constitution mandates be open to their enjoyment on equal terms with white persons. The city has effected, continues to effect, and claims the right or need to prolong patently unconstitutional racial discriminations violative of now long-declared and well-established individual rights. The claims of the city to further delay in affording the petitioners that to which they are clearly and unquestionably entitled cannot be upheld except upon the most convincing and impressive demonstration by the city that such delay is manifestly compelled by constitutionally cognizable circumstances warranting the exercise of an appropriate equitable discretion by a court. In short, the city must sustain an extremely heavy burden of proof.

"Examination of the facts of this case in light of the foregoing discussion discloses with singular clarity that this burden has not been sustained: * * *" Page 7

* * *

"In support of its judgment, the District Court also pointed out that the recreational facilities available

---

2. These plaintiffs no longer have standing to pursue this action and they are hereby dismissed as plaintiffs.

3. Although the plan was not part of the record in the case, it was described in

oral argument before the Court of Appeals. The plan did not provide for complete desegregation of all facilities until 1971. Watson v. City of Memphis, supra f/n 1

for Negroes were roughly proportional to their number and therefore presumably adequate to meet their needs. While the record does not clearly support this, no more need be said than that, even if true, it reflects an impermissible obeisance to the now thoroughly discredited doctrine of 'separate but equal.' The sufficiency of Negro facilities is beside the point; it is the segregation by race that is unconstitutional." Page 11

The Court remanded the case for proceedings in accordance with the opinion.

■■ Applying the Watson case to the facts presented here, there can be only one decision. Under the facts stated above and the decision which must be reached herein, there is no necessity in ruling on the various motions as between the plaintiffs and the original defendants except the motion for summary judgment. Under the existing facts, there are no remaining issues to be passed upon which would or could affect the outcome of this case. The plaintiffs were denied admission to two of the State Parks operated by the State of South Carolina solely because of their race in accordance with the statutory law of South Carolina. There can be no racial discrimination in the operation of State owned or operated recreational facilities. Watson v. City of Memphis, supra. The plaintiffs and all other Negroes similarly situated are entitled to use the State Parks of South Carolina in the same manner and to the same extent as are white persons. The statutory laws set out above which require separate parks for the use of white citizens and Negro citizens are in violation of the Fourteenth Amendment of the United States Constitution.

The plaintiffs' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure must be granted.

■ The record reflects that in the opinion of the officers of the Commission of Forestry and the South Carolina Law Enforcement Department, the desegregation of the South Carolina parks will drastically affect the police protection required at the various parks and in their opinion the desegregation will result in serious racial strife at the parks. Some affiants stated that they believed it would be necessary to close the parks if they were desegregated. To a similar argument in the Watson case, the United States Supreme Court said: " * * * The compelling answer to this contention is that constitutional rights may not be denied simply because of hostility to their assertion or exercise." Page 8 (citations of cases omitted) The Court cannot, however, ignore the fact that long standing customs are not changed without planning, education, leadership and foresight. Considering the far reaching consequences of this decision upon the State of South Carolina, it is manifest that the State must be allowed a reasonable opportunity to staff these facilities with properly trained personnel and police officers so that the transition of the State Parks from a segregated system to an integrated one may be carried out in an orderly manner.

■ The Answer of the Intervenor, Davis Lee, does not and could not affect the outcome of this case. Lee's motion to bring in additional parties and to file a counterclaim against the plaintiffs and the additional parties attempts to create issues which are foreign to the present action and to gain jurisdiction of parties over which this Court does not now have jurisdiction. Mr. Lee may pursue his alleged cause of action in a separate suit against any parties who may have committed unlawful acts against him. His motions to bring in additional parties and to file a counterclaim are hereby denied.

### ORDER

It is hereby ordered that the South Carolina Commission of Forestry be enjoined and restrained from discriminating against the plaintiffs and all other Negroes similarly situated in using the State Parks of South Carolina solely because of their race.

It is further ordered, that the State of South Carolina and the South Carolina Forestry Commission be enjoined and restrained from enforcing §§ 51–2.1, 51–2.2, 51–2.3 and 51–2.4 of the South Carolina Code (1962).

It is further ordered that this Order become effective sixty days from date.